JUMP et al. v. ELLIS, Superintendent of Osage Indian Agency.*

No. 1725.

Circuit Court of Appeals, Tenth Circuit.

Oct. 26, 1938.

Rehearing Denied Dec. 27, 1938.

Neal E. McNeill, of Tulsa, Okl., for appellants.

Raymond M. Kell, Atty., Department of Justice, of Washington, D. C. (Charles E. Collett, Acting Asst. Atty. Gen., Whit Y. Mauzy, U. S. Atty., of Tulsa, Okl., and Oscar A. Provost, Atty., Department of Justice, of Washington, D. C., on the brief), for appellee.

Before PHILLIPS, BRATTON, and WILLIAMS, Circuit Judges.

*Writ of certiorari denied 59 S.Ct. 584, 83 L.Ed. —.

PHILLIPS, Circuit Judge.

This is an appeal from a decree dismissing the bill in a proceeding in equity brought by Josephine Jump, nee Strikeaxe, and James Strikeaxe, by his guardian Joe S. McGuire, against C. L. Ellis, Superintendent of the Osage Indian Agency.

The bill alleged these facts:

Josephine Jump, née Strikeaxe, and James Strikeaxe are full-blood Indians, duly enrolled as members of the Osage Tribe of Indians, and are the children and sole heirs of Bennie Strikeaxe, deceased. McGuire is the duly appointed, qualified, and acting guardian of James Strikeaxe, an incompetent. C. L. Ellis is the Superintendent of the Osage Indian School and also acts as Indian Agent of the Osage Indian Agency. Ellis, as such superintendent, has in his possession the tribal rolls of the Osage Tribe of Indians, including the tribal roll as it existed on January 1, 1906.

On December 31, 1881, the Osage Indians adopted their constitution. On that date there was on file in the Osage Agency a roll of the membership of the tribe as it then existed. Thereafter, until August 19, 1890, a new roll was made up at the beginning of each fiscal year. After the last-mentioned date, quarterly payments were required and new rolls were made up quarterly during each year.[1] Each new roll was revised by adding thereto members of the tribe found to be entitled to enrollment, including newborn members, and by omitting from the revised rolls the names of those members who had died.

By rules and regulations adopted and promulgated by the Secretary of the Interior on April 1, 1904, it was provided that deceased Indians might be carried on the rolls for one quarterly payment after death.[2] Thereafter the rolls were revised quarterly and designated as the March, June, September, and December annuity pay rolls for each year, respectively. In making up a new roll those members who had died prior to making the last quarterly payment were omitted. Applications for enrollment, including applications of newborn members, were presented to the Osage Council and if approved by the Council were added to the new roll.

The name of Bennie Strikeaxe appeared on the 1905 rolls and on the succeeding rolls up to and including the March 6, 1906, annuity pay roll. On or about December 1, 1905, the Osage Indian Agent prepared in duplicate a tribal roll on the form prescribed by the Secretary of the Interior, using the September, 1905, annuity roll as a basis. The name of Bennie Strikeaxe appeared upon the September, 1905, annuity pay roll opposite roll No. 582, and it was inscribed on the December, 1905, duplicate annuity pay roll at page 13, opposite roll No. 588, as a member of the tribe, and remained on the December roll when the same was completed and closed. On December 13, 1905, the Osage Indian Agent disbursed the funds allocated to Bennie Strikeaxe and his son, James Strikeaxe, to Foster Strikeaxe, who signed and receipted the annuity pay roll in duplicate and caused to be noted opposite roll No. 588 the word "crazy," indicating that on December 13, 1905, Bennie Strikeaxe was insane. On December 30, 1905, the Osage Indian Agent duly certified to the December, 1905, duplicate annuity pay roll, which showed the members of the tribe and the amounts that had been paid to each member, and forwarded it, together with the receipts for the payments, to the Commissioner of Indian Affairs at Washington, D. C. A duplicate of the December, 1905, roll remained in the Osage Indian Agent's office.

The roll of the tribe made pursuant to the Osage Allotment Act of June 28, 1906, 34 Stat. 539, did not contain the name of Bennie Strikeaxe. After the adoption of such Allotment Act, the Commissioner of Indian Affairs sent a letter of instruction to the Osage Indian Agent, which read as follows:

"Washington, January 30, 1908.
"Subject: Requests certified roll of Osage Tribe,
"The U. S. Indian Agent,
"Osage Agency, Pawhuska, Oklahoma.

"Sir: In view of the provisions of the Act of Congress approved June 28, 1906 (34 Stat.L. 539), known as the Osage Allotment Act, it is desired that you prepare in triplicate as complete a roll as possible of the Osage Tribe of Indians and forward all parts to this office for approval by the Secretary of the Interior.

"The roll should consist of (1) names of the Osage tribal roll as it existed in your office on the first day of January, 1906; and (2d) of the names of all persons, including

---

[1] Act of August 19, 1890, 26 Stat. 336, 344.

[2] Regulations of Indian Office, effective April 1, 1904.

adults and children, subsequently added thereto by direction of this office with the authority of the Secretary of the Interior in accordance with the provisions of section one of the act named.

"The column for remarks in the roll should show the date and file number of the authority for each name added to the roll 'as it existed on the first day of January, nineteen hundred and six.'

"You should properly certify to the correctness of the roll.

"Very respectfully,
"C. F. Larrabee,
"Acting Commissioner."

Subsequently to January 1, 1906, some person in the office of the Osage Indian Agency made certain lead pencil notations upon page 13 of the December, 1905, annuity payroll, as follows: Opposite roll No. 565 "Died December 22, 1905"; opposite roll No. 579 "Married Coleman—died February 21, 1906"; and opposite the name of Bennie Strikeaxe, No. 588, "Died December 28, 1905."

From and after April 1, 1904, the Osage Indian Agent kept an unofficial record of deaths occurring after that date. Such record of deaths recorded between July 1, 1905, and February 21, 1906, did not contain the name of Bennie Strikeaxe, and such record did not show the death of Bennie Strikeaxe on or prior to January 1, 1906.

The complainants now have an action pending in the Supreme Court of the District of Columbia against the Secretary of the Interior to enforce their rights as heirs of Bennie Strikeaxe. They allege that it is necessary to the prosecution of that action that they have a true and correct copy of the roll of the Osage Indians as it existed on January 1, 1906, in the office of the United States Indian Agent at the Osage Agency, and that this cannot be secured until such roll be corrected to speak the truth by eliminating the pencil notations thereon.

The complainants pray for a decree adjudging that the lead pencil notations appearing on the December, 1905, annuity pay roll on file in the office of the defendant are invalid, and commanding the defendant to erase and expunge therefrom such lead pencil notations, to prepare in triplicate an amended roll of the Osage Tribe of Indians as of January 1, 1906, to inscribe upon such triplicate roll the name of Bennie Strikeaxe, disclosing that Bennie Strikeaxe's name appeared upon the Osage tribal roll as it existed on January 1, 1906, in the office of the United States Indian Agent at the Osage Indian Agency opposite roll No. 588, and to certify and forward the same to the Commissioner of Indian Affairs.

At the threshold we are confronted with the question whether this suit may be maintained without joining the Secretary of the Interior as a party defendant.

Sections 462 and 463, R.S.2d Ed., 1878, 25 U.S.C.A. §§ 1 and 2, read as follows:

"Sec. 462. There shall be in the Department of the Interior a Commissioner of Indian Affairs, who shall be appointed by the President, by and with the advice and consent of the Senate, and who shall be entitled to a salary of three thousand dollars a year.

"Sec. 463. The Commissioner of Indian Affairs shall, under the direction of the Secretary of the Interior, and agreeably to such regulations as the President may prescribe, have the management of all Indian affairs, and of all matters arising out of Indian relations."[3]

The Act of May 18, 1824, 4 Stat. 25, authorized the President "to appoint an agent for the Osage Indians west of the state of Missouri, and territory of Arkansas." The last-mentioned act was repealed by the Act of June 30, 1834, 4 Stat. 734.

Section 4 of the Act of June 30, 1834, 4 Stat. 735, provided for the appointment by the President, by and with the advice and consent of the Senate, of Indian Agents for

---

[3] The Act of July 9, 1832, 4 Stat. 564, in part provided:

"That the President shall appoint, by and with the advice and consent of the Senate, a commissioner of Indian affairs, who shall, under the direction of the Secretary of War, and agreeably to such regulations as the President may, from time to time, prescribe, have the direction and management of all Indian affairs, and of all matters arising out of

Indian relations, and shall receive a salary of three thousand dollars per annum."

By the Act of July 29, 1848, 9 Stat. 264, certain duties with respect to Indian affairs were vested in the Secretary of the Treasury.

By the Act of July 27, 1868, 15 Stat. 228, the duties imposed upon the Secretary of the Treasury were vested in the Secretary of the Interior.

certain specified agencies, and all other agencies.

Section 2052, R.S.2d Ed., 1878, 25 U.S. C.A. § 26, in part reads:

"The President is authorized to appoint from time to time, by and with the advice and consent of the Senate, the following Indian agents: * * *

"Fourteen for the tribes east of the Rocky Mountains, and north of New Mexico and Texas."[4]

Section 7 of the Act of June 30, 1834, 4 Stat. 735, 736, as it appears in R.S. 2d Ed., 1878, § 2058, 25 U.S.C.A. § 31 reads as follows:

"Each Indian agent shall, within his agency, manage and superintend the intercourse with the Indians, agreeably to law; and execute and perform such regulations and duties, not inconsistent with law, as may be prescribed by the President, the Secretary of the Interior, the Commissioner of Indian Affairs, or the Superintendent of Indian Affairs."

The Act of March 1, 1907, 34 Stat. 1015, 1020, 25 U.S.C.A. § 66, in part reads as follows:

"The Commissioner of Indian Affairs, with the approval of the Secretary of the Interior, may devolve the duties of any Indian agency or part thereof upon the superintendent of the Indian school located at such agency or part thereof whenever in his judgment such superintendent can properly perform the duties of such agency. And the superintendent upon whom such duties devolve shall give bond as other Indian agents."

On November 28, 1908, the Commissioner of Indian Affairs, with the approval of the Secretary of the Interior, devolved the duties of the Osage Indian Agency upon the Superintendent of the Indian School located at the Osage Agency, and since that date the superintendents of such Indian School have performed the duties of such agency.

The Act of August 19, 1890, 26 Stat. 336, 344, provided:

"The Secretary of the Interior is hereby authorized and directed to pay to the Osage Indians in quarterly payments the interest on their land fund as it accrues, except so much as may be necessary for the establishment and support of schools and pay of employees."

On April 1, 1904, the Commissioner of Indian Affairs, with the approval of the Secretary of the Interior, published revised regulations for the Indian Office. These regulations were amended April 1, 1905, and on June 30, 1905, the Commissioner of Indian Affairs issued a circular of instructions relative to the enrollment of children born to annuitants as members of the tribe to which their parents belong. Those portions of the regulations and the amendments thereto dealing with the preparation of rolls for annuity payments are set forth in note 5.

---

4 See Act of February 14, 1873, 17 Stat. 437.

5 "1. A roll will be prepared containing the name and a brief description of each Indian entitled to share in the payment, and the names on such roll will be numbered consecutively from 1 to the end. The forms to be used for this purpose are 5-322a, 5-322b, and 5-322c."

"2. The arrangement will be by family groups, heads of families being enrolled first and followed by their wives and minor children, and any other persons whose shares of annuity they are entitled to draw."

"3. Inasmuch as Indians attain their majority in respect to annuities at the age of 18 years, all single persons 18 years old and over will be enrolled by themselves. Persons under that age will be enrolled with their parents, unless they are married or have children of their own, in which events they will either be enrolled with their husbands or recog-

nized as heads of families and treated accordingly."

"4. [as amended] All children born to annuitants either before or since the last preceding payment, who have not already been enrolled, should be enrolled with their parents. * * *"

"5. Deceased Indians may be carried on the rolls for one payment after death. This applies to all periodical payments, whether the funds to be distributed are regular annuities or derived from sales of timber, grazing privileges, or other miscellaneous sources. In other words, where an Indian has been accustomed to receiving regular payments of more than one kind of funds, he may be carried on the rolls for one payment of each after death, provided the same accrued during the lifetime of the annuitant."

"6. Each annuity roll will be carefully compared with the one immediately preceding, and, as far as practicable, the names on the two rolls will be made to correspond. The number of the individu-

The pertinent provisions of the Osage Allotment Act of June 28, 1906, 34 Stat. 539, 545 are set out in note 6.

Section 4 of the Act of March 3, 1875, 18 Stat. 420, 449, 25 U.S.C.A. § 133, directed "each agent in charge of Indians and having supplies to distribute, to make out, at the commencement of each fiscal year, rolls of the Indians entitled to supplies at the agency, with the names of the Indians and of the heads of families or lodges, with the number in each family or lodge, and to give out supplies to the heads of families, and not to the heads of tribes or bands * * *."

Counsel for the complainants asserts that the provision of the Act of March 3, 1875, adverted to above, imposed the primary duty and obligation on the Indian agent to prepare a roll of the tribe, and that it was the primary duty of the Indian Agent of the Osages to prepare the quarterly annuity pay rolls. It will be observed that Section 4 of the Act of March 3, 1875, provided for the making of a roll of the Indians entitled to supplies at the agency, and not to a roll of the members of the tribe for the purpose of annuity payments. Under the Act of August 19, 1890, the Secretary of the Interior was authorized and directed

---

al on the previous roll will be entered in red ink opposite the name of the same individual on the current roll. If a name on the previous roll does not appear on the current roll, the reason for the omission must be given."

"19. Agents will be careful to note on the payrolls, in the column of 'Remarks,' any matters which are unusual, such as date of birth of each child enrolled since previous payment; date of death of each deceased annuitant; * * *"

6 "Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That the roll of the Osage tribe of Indians, as shown by the records of the United States in the office of the United States Indian agent at the Osage Agency, Oklahoma Territory, as it existed on the first day of January, nineteen hundred and six, and all children born between January first, nineteen hundred and six, and July first, nineteen hundred and seven, to persons whose names are on said roll on January first, nineteen hundred and six, and all children whose names are not now on said roll, but who were born to members of the tribe whose names were on the said roll on January first, nineteen hundred and six, including the children of members of the tribe who have, or have had, white husbands, is hereby declared to be the roll of said tribe and to constitute the legal membership thereof: Provided, That the principal chief of the Osages shall, within three months from and after the approval of this Act, file with the Secretary of the Interior a list of the names 'which the tribe claims were placed upon the roll by fraud, but no names shall be included in said list of any person or his descendants that was placed on said roll prior to the thirty-first day of December, eighteen hundred and eighty-one, the date of the adoption of the Osage constitution, and the Secretary of the Interior, as early

as practicable, shall carefully investigate such cases and shall determine which of said persons, if any, are entitled to enrollment; but the tribe must affirmatively show what names have been placed upon said roll by fraud; but where the rights of persons to enrollment to the Osage roll have been investigated by the Interior Department and it has been determined by the Secretary of the Interior that such persons were entitled to enrollment, their names shall not be stricken from the roll for fraud except upon newly discovered evidence; and the Secretary of the Interior shall have authority to place on the Osage roll the names of all persons found by him, after investigation, to be so entitled, whose applications were pending on the date of the approval of this Act; and the said Secretary of the Interior is hereby authorized to strike from the said roll the names of persons or their descendants which he finds were placed thereon by or through fraud, and the said roll as above provided, after the revision and approval of the Secretary of the Interior, as herein provided, shall constitute the approved roll of said tribe; and the action of the Secretary of the Interior in the revision of the roll as herein provided shall be final, and the provisions of the Act of Congress of August fifteenth, eighteen hundred and ninety-four, Twenty-eighth Statutes at Large, page three hundred and five, granting persons of Indian blood who have been denied allotments the right to appeal to the courts, are hereby repealed as far as the same relate to the Osage Indians; and the tribal lands and tribal funds of said tribe shall be equally divided among the members of said tribe as hereinafter provided. * * *

"Sec. 12. That all things necessary to carry into effect the provisions of this Act not otherwise herein specifically provided for shall be done under the authority and direction of the Secretary of the Interior."

to make the quarterly payments to the Osage Indians. It would seem this general authority would embrace the duty of supervising the making of the roll of the tribe in order to determine the persons entitled to such payments. The Commissioner of Indian Affairs so construed the statute and included in the general regulations of April 1, 1904, specific instructions and directions with respect to the preparation of the annuity pay rolls.

Furthermore, Section 1 of the Osage Allotment Act provides that the roll of the tribe shall constitute an approved roll after revision and approval by the Secretary of the Interior, and Section 12 of that act provides that all things necessary to carry into effect its provisions, not otherwise specifically provided for, shall be done under the authority and direction of the Secretary of the Interior. It seems clear to us that the preparation of the Osage tribal roll under that act was to be done under the direction and supervision of the Secretary of the Interior. The Commissioner of Indian Affairs so construed the act and issued his letter of instructions under date of January 30, 1908, above set out.

Moreover, by virtue of the statutes above adverted to the direction and management of all Indian affairs are committed to the Commissioner of Indian Affairs as a subordinate officer of the Secretary of the Interior, and Indian Agents are required to "execute and perform such regulations and duties * * * as may be prescribed by the President, the Secretary of the Interior, and the Commissioner of Indian Affairs." It follows that the Indian Agent in charge of the Osage Agency in preparing the quarterly pay rolls, including the December, 1905, annuity pay roll and the tribal roll under the Osage Allotment Act, acted as an agent and subordinate of the Commissioner of Indian Affairs and the Secretary of the Interior.

The defendant herein, Superintendent of the Indian School, in performing the duties of the Osage Agency is likewise an agent and subordinate of the Commissioner of Indian Affairs and the Secretary of the Interior.

In the case of Webster v. Fall, Secretary of the Interior, et al., 266 U.S. 507, 45 S.Ct. 148, 69 L.Ed. 411, Webster, an adult member of the Osage Tribe of Indians,

brought an action against the Secretary of the Interior and Wright, as Superintendent of the Osage Agency, and Wise, a special disbursing agent charged with the duty of paying and disbursing funds and moneys due individual Osage Indians, to secure a mandatory injunction commanding and requiring that moneys and funds due Webster under the Act of March 3, 1921, 41 Stat. 1249, 1250, be assigned and paid over to him, alleging that the same were being unlawfully withheld. There was no service upon the Secretary and he did not appear in the suit. The court held that neither Wright nor Wise had any primary authority in the matter; that they were mere agents and subordinates of the Secretary of the Interior; that they could act only under and in virtue of the Secretary's general or special directions; that they were responsible to him and were required to abide his directions; and that what they did is as if it were done by him; and that, therefore, the Secretary of the Interior was an indispensable party.[7]

We are of the opinion that the principles announced in that case are applicable here and that the Secretary is an indispensable party to this action.

The decree is, therefore, affirmed.

---

[7] See, also, Gnerich v. Rutter, 265 U. S. 388, 44 S.Ct. 532, 68 L.Ed. 1068.