## REDEAGLE et al. v. CHANNING et al.

No. 20247. Opinion Filed Nov. 18, 1930.

Rehearing Denied Dec. 23, 1930.

Dick Rice and D. H. Cotton, for plaintiffs in error.

Vern E. Thompson, E. C. Fitzgerald, F. D. Adams, Commons & Chandler, Paxton Howard, S. J. Montgomery, Rollie C. Clark, and C. C. Caldwell, for defendants in error.

ANDREWS, J. This is an appeal from the judgment of the district court of Ottawa county, Okla., sustaining several demurrers to the amended petition filed therein on the ground that the court had no jurisdiction of the subject-matter of the action. The subject-matter of that action was an undivided one-half interest claimed by the plaintiffs in the allotment of a deceased full-blood member of the Quapaw Tribe of Indians. The land is situated in Ottawa county. The plaintiffs alleged that they were paternal heirs and, as such, entitled to a one-half interest in the property. The defendants claimed the entire property under the maternal heirs. The parties appear in this court in the same order in which they appeared in the trial court, and they will be hereinafter referred to as plaintiffs and defendants, respectively. The issue for determination by this court is stated by the plaintiffs and agreed by the defendants to be whether the district court of Ottawa county, Okla., had jurisdiction of the subject-matter of the action.

It is alleged in the petition that Ira C. Deaver, superintendent, took the testimony at the hearing to ascertain the heirs of the allottee and that:

"* * * After said testimony and report of Ira C. Deaver, superintendent, reached the Department of the Interior the Secretary of

the Interior, acting by and through F. C. Hauke. Assistant Commissioner of Indian Affairs, and Bo Sweeney Assistant Secretary of the Interior, made a decision on the testimony so taken and the report so made, determining the allotment of Alexander Mudd, deceased, to be an ancestral estate under the laws of Arkansas in force in said Indian Territory at the date of the death of said allottee, and ascertained and decided that the legal heirs of said Alexander Mudd, deceased, entitled to inherit his said allotment, were his paternal and maternal heirs, and the said Secretary of the Interior named and identified the plaintiffs and their predecessors, as the paternal heirs of said Alexander Mudd and entitled to inherit an undivided one-half interest in his said allotment, and named and identified the defendants, Victor Griffin, Arthur Buffalo, Lena Lewis, nee Buffalo, Clara Buffalo Rodgers, Hazel Buffalo Mc-Dunner, Nora Buffalo Brock, and Willie Buffalo as the maternal heirs and entitled to inherit as such an undivided one-half interest in said allotment. but said Secretary of the Interior arbitrarily and without jurisdiction so to do, distributed the entire estate to the maternal heirs.

"That said decision of the Secretary of the Interior was made in writing and in the form of a written communication addressed to the Secretary of the Interior by the Second Assistant Commissioner of Indian Affairs, dated July 9, 1914, and approved by Bo. Sweeney, Assistant Secretary of the Interior, which decision is in words and figures, as follows:

"' July 9, 1914.

" 'The Honorable, the Secretary of the Interior.

" 'Sir: I have the honor to transmit herewith report on heirship and accompanying papers in the case of Alexander Mudd, deceased. Quapaw Allottee Nos. 177 and 186-2nd. who died intestate January 19, 1898. The facts in the case are as follows: * * *

" 'I have the honor to recommend that the finding of heirship as indicated by the decree of the court of Ottawa county, Oklahoma, and as confirmed by the sale approved by this department (Land Sales 11625-11) be hereby approved as follows:

" 'Victor Griffin 1/2
" 'Arthur Buffalo 1/12
" 'Henry Buffalo 1/12
" 'Clara Buffalo 1/12
" 'Hazel Buffalo 1/12
" 'Nora Buffalo 1/12
" 'Willie Buffalo 1/12

" 'The share of the children of Joe Buffalo being subject to the dower right of their mother, Cinnie Brown Buffalo, amounting to a life interest in one-third of their share, or one-sixth of the entire estate.

" 'Respectfully,

" 'F. C. Hauke, Second Assistant Commissioner.' "

The amended petition, as a whole, does not support the conclusion of the pleader. It shows that F. C. Hauke, Second Commissioner of Indian Affairs, made the report and recommendation to the Secretary of the Interior, as set out in the amended petition. That instrument was not and does not purport to be a decision of the Secretary of the Interior. It is a report of a subordinate officer to the Secretary of the Interior, accompanied by a recommendation as to what the Secretary of the Interior should do. What the Secretary of the Interior did is shown by that portion of the amended petition which sets out the order made by his assistant, which reads as follows:

"Office of the Secretary.

"Approved. It appears from the evidence adduced at the hearing concluded May 12, 1914, that the heirs of the estate of Alexander Mudd, deceased allottee No. 177 and 186-2nd of the Quapaw Tribe, and their respective shares are as follows:

"Victor Griffin 1/2
"Arthur Buffalo 1/12
"Henry Buffalo 1/12
"Clara Buffalo 1/12
"Hazel Buffalo 1/12
"Nora Buffalo 1/12
"Willie Buffalo 1/12

"—the share of the children of Joe Buffalo, being subject to the dower right of their mother, Cinnie Brown Buffalo, amounting to a life interest in one-third of their share, or one-sixth of the entire estate.

"Inasmuch as this land is held under a restricted deed, no fee is collectible.

"(Sgd.) Bo Sweeney,
"Assistant Secretary."

In our opinion, the Secretary of the Interior, acting through his assistant, approved the recommendation made to him by the Second Assistant Commissioner, and found from "the evidence adduced at the hearing" for determination of the heirs of the allottee that the heirs and their shares were as set forth in the determination thereof signed by the Assistant Secretary of the Interior.

When this fact is kept in mind, the issues in this case are simplified, and it is necessary to keep it in mind for the reason that the basis of the plaintiffs' claim is that the Second Assistant Commissioner's report does not justify the recommendation made by him, and that when the facts set forth

in his report are examined, the recommendation made by him is shown to be erroneous.

The jurisdiction to determine a question of fact carries with it the jurisdiction to determine that fact either correctly or erroneously. The Secretary of the Interior, acting through his assistant, determined the heirs of the estate of the deceased allottee and the shares of each. The record shows that he made that determination "from the evidence adduced at the hearing" had for that purpose. It is now contended by the plaintiffs that this court may review that evidence for the purpose of determining whether or not the Secretary of the Interior erred in his determination as to who were the heirs of the deceased allottee. The plaintiffs say that the Secretary of the Interior was "confined to the determination and ascertainment of a question of fact," and that he may determine a question of law only when it is necessary or incidental to the determination of a question of fact.

We do not think it necessary to discuss the authority of the Secretary of the Interior to determine questions of law, as the order made by the Secretary of the Interior does not purport to determine other than a question of fact,—who were the heirs of the deceased allottee,—and plaintiffs admit the authority to determine all questions of law necessary or incidental to the determination of that question of fact.

If the report and recommendation of the Second Assistant Commissioner constituted a determination by the Secretary of the Interior, there would be some merit in the contention of the plaintiffs, but since that report and recommendation was not binding upon the Secretary of the Interior, and since this court is unable to determine what portion of that report and recommendation was approved by the Secretary of the Interior, we must take the order of the Assistant Secretary of the Interior at its face value and conclude that the determination of the heirs by the Secretary of the Interior was "from the evidence adduced at the hearing" and not from some recommendation or discussion of law contained in the report of the Second Assistant Commissioner.

Having arrived at a decision as to the facts shown by the amended petition, it is unnecessary for us to discuss all of the various theories advanced by the plaintiffs, and we will confine our discussion to what we consider to be the determining factor in the case.

The land involved in this action was allotted by trust patent providing that the land should be inalienable for a period of 25 years from and after the date of the patent. Act of Congress, March 2, 1895 (28 Stat. L. 907). The restrictions contained in the patents and the law, had they not been extended, would have expired on September 26, 1921, and October 18, 1921. At the time the Secretary of the Interior proceeded to determine the heirs (June, 1914), this land was restricted. That determination was made under the provisions of the Act of Congress, June 25, 1910 (36 Stat. L., 855), as amended by the act of Congress February 14, 1913 (37 Stat. L. 678). That act provided that the Secretary of the Interior should ascertain the legal heirs of the allottee and that "his decision thereon shall be final and conclusive." Under the Act of Congress of March 3, 1921 (41 Stat. L. 1225-1248), the restrictions on such land were extended for a further period of 25 years from and after the passage of that act. Under that act restrictions were extended to include "any Quapaw allotted or inherited lands in which any of the said named Indians have any undivided interests." Sec. 26.

It is the theory of the plaintiffs in this case that they were not bound by the action of the Secretary of the Interior in determining the heirs. If they are not bound by that determination, then they have an inherited interest in the property, and that interest, under the terms of the act, is restricted and was restricted at the time of the filing of the amended petition in this case. The Acts of Congress of 1910 and 1913, hereinbefore referred to, are in full force and effect and the interest of these plaintiffs, if any, in the land is restricted thereby.

It is contended by the plaintiffs that the act of the Secretary of the Interior in attempting to partition the estate among the parties whom he found to be heirs to the estate, the subsequent sale of the property by some of those to whom he partitioned the same, and the approval of a mining lease by the Secretary of the Interior operated to remove the restrictions on the land.

We cannot follow that contention. Such acts could affect only the interest of those found and determined by the Secretary of the Interior to be heirs to the estate, and they would have no effect upon the right of those who were not found by the Secretary of the Interior and determined by him to be heirs to the estate. If the action of the Secretary of the Interior was valid, these plaintiffs have no interest in this property. If it was not valid, they retain all the interest that they inherited, but they retain that interest subject to all the restrictions

imposed by the acts of Congress upon the land. The restrictions upon the land inherited by them were not and could not be removed by any action of the Secretary of the Interior, if the determination by the Secretary of the Interior that they were not heirs, is not binding upon them.

This court, in the case of Caesar v. Krow, 71 Okla. 233, 176 Pac. 927, had before it the question of authority of the district court to determine the heirship of a Pawnee Indian to whom land had been allotted in trust. This court there held that the district court had no jurisdiction in such a proceeding, following a long line of decisions in accord with that view, and said:

"The conclusion that the state court was without jurisdiction does not, as claimed, leave plaintiffs without a forum in which to present their case, for in Franklin K. Lane, Secretary of the Interior, v. United States of America, 241 U. S. 201, 36 Sup. Ct. 599, 60 L. Ed. 956, it was held under the Act of June 25, 1910, that, although the Secretary of the Interior had recognized certain adopted children of a deceased Indian allottee as his heirs, he had not exhausted his power to reopen the question of the heirship of said decedent, since during the trust period the Indian allotment was still in the administrative control of the Department of the Interior, because of the trust imposed by law."

In Spicer v. Coon, 110 Okla. 233, 238 Pac. 833, a similar question was presented. This court held that a determination by the Secretary of the Interior of the legal heirs of such an allottee "is final and conclusive and will not be reviewed by a state court after the expiration of the trust period, in an action at law by one claiming to be an heir of the allottee, for the recovery of said allotment." If such a determination cannot be reviewed after the expiration of the trust period, how can it be contended that it may be reviewed while the trust period is still in force?

Since this court has passed upon this question in the two cases cited, we do not consider it necessary to cite the decisions of the United States courts to the same effect.

Plaintiffs call attention to the case of Gray v. McKnight, 75 Okla. 268, 183 Pac. 489, and say that it is in point. There the court said:

"As we have already seen, although the decedent's allotment descended to his heirs according to the Oklahoma laws of descent, during the trust period the state courts were without jurisdiction to determine who, in fact, were his heirs, and this condition existed at the time of the appointment of the executor for his estate. However, the probate court of Caddo county lacked jurisdiction to determine who in fact were his heirs only because the plenary authority to legislate for the Indians relative to their allotted lands rested solely with Congress, and not because the Oklahoma law did not make provisions therefor."

The issuance of the final patent to the heirs of the deceased allottee, as shown in that case, operated to remove all restrictions upon that land and the government thereby relinquished any right to thereafter determine who were the heirs. The statutes of Oklahoma automatically conferred jurisdiction upon the county court. In this case no such final patent has been issued. The most that can be said here is that the government has approved the sale and lease by certain heirs of such interests as those heirs owned. There is nothing in this record to show that the government ever relinquished its supervision over such portion of this land, if any, as is owned by the plaintiffs in this case.

It is contended by the plaintiffs that they had no notice of the hearing held by the Secretary of the Interior for the determination of the heirs, and that for that reason the determination by that officer is void.

The courts of this state are without jurisdiction to control the actions of the Secretary of the Interior in a proceeding within his exclusive jurisdiction, and the fact that he failed to cause notice of a hearing to be given to the plaintiffs does not confer upon our courts jurisdiction to question the determination made by him or to determine questions reserved by Congress for his determination.

The judgment of the trial court is affirmed.

LESTER, V. C. J., and CLARK, RILEY, CULLISON, and SWINDALL, JJ., concur.

MASON, C. J., and HUNT and HEFNER, JJ., absent.