**ARENAS v. UNITED STATES et al.**

No. 12356.

United States District Court
S. D. California, C. D.
Feb. 19, 1951.

John W. Preston, Oliver O. Clark, Esq., Los Angeles, Cal., for the plaintiff.

Ernest A. Tolin, U. S. Atty., Los Angeles, Cal., Irl D. Brett, Special Asst. to the Atty. Gen., Lands Division, Dept. of Justice, for the defendants.

YANKWICH, District Judge.

## I.

### Heirship of Allotees of Indian Lands.

The continuing tutelage which the Government exercises over Indians and their lands[1] and the desire of the Congress to

---

1. United States v. Kagama, 1886, 118 U. S. 375, 383–385, 6 S.Ct. 1109, 30 L.Ed. 228; Shoshone Tribe of Indians, etc., v. United States, 1937, 299 U.S. 476, 497, 57 S.Ct. 244, 81 L.Ed. 360; Board of Commissioners of Creek County v. Seber, 1943, 318 U.S. 705, 715–717, 63 S.Ct. 920, 87 L.Ed. 1094. And see, my opinion in the case with which this litigation began, St. Marie v. United States, D.C. Cal.1938, 24 F.Supp. 237, 239–241. The history of this case illustrates how the failure to pursue *a final remedy* may result in great mischief and affect future litigation. The case was affirmed by the Court of Appeals for the Ninth Circuit: St. Marie v. United States, 1940, 108 F. 2d 876. Certiorari was denied by the Supreme Court "for the reason that application therefor was not made within the time provided by law". St. Marie v. United States, 1940, 311 U.S. 652, 61 S.Ct. 35, 36, 85 L.Ed. 417. When the plaintiff in the present action, who had not been a party to the St. Marie suit, began his action to compel allotment in the same District Court, the late Judge J. F. T. O'Connor, assuming that the St. Marie case had declared the law, rendered judgment in favor of the Government. The Court of Appeals agreed with this conclusion: Arenas v. United States, 9 Cir., 1943, 137 F.2d 199. But the Supreme Court called attention to the fact that the denial of certiorari had been solely on the ground of the untimeliness of the petition: Arenas v. United States, 1944, 322 U.S. 419, 64 S.Ct. 1090, 88 L.Ed. 1363. As this meant no implicit approval of the rulings of the lower courts, the Court proceeded to declare that the St. Marie case was decided wrongly, and ordered the Arenas case back to the trial court, where it again began a long journey, which, if one judges by this litigation, is not ended yet.

In the meantime, the questionable law declared in the St. Marie case was declared the law of the case,—so far as the plaintiffs in that case were concerned: Hatchitt v. United States, 9 Cir., 1946, 158 F.2d 754. Of course, despite the power of a Justice of the Supreme Court to extend the 90-day period during which certiorari must be applied for, 28 U.S.C.A. § 2101(c), failure to apply within the time allowed by statute deprives the court of jurisdiction to

prevent their exploitation and spoliation have resulted in the granting of the right of access to judicial tribunals and administrative bodies for the determination of questions incident upon the rights to lands held under trust allotments made under various acts of the Congress.

Two statutory enactments are fundamental in this matter. The first is the Act of February 6, 1901.[2] By this Act, persons in whole or in part of Indian blood or descent who (a) are "entitled to an allotment" under any Act of the Congress, or (b) who "claim to be so entitled" to such an allotment, or (c) who claim to "have been unlawfully denied or excluded from any allotment or any parcel of land". to which they claim to be entitled, may institute an action in the District Courts of the United States.

Three groups of cases are covered by the statute: (a) those seeking to establish the right to an allotment[3], (b) those in which the Indians are seeking to protect their interest in land to which they are entitled under any congressional grant, and to which they have been denied allotment, and (c) cases where the Indian has been excluded unlawfully from any parcel of land to which he may be entitled under any Act of the Congress.[4]

The other statute is the Act of June 25, 1910,[5] which, in part, reads: "When any Indian to whom an allotment of land has been made, or may hereafter be made, dies before the expiration of the trust period and before the issuance of a fee simple patent, without having made a will disposing of said allotment as hereinafter provided, the Secretary of the Interior, upon notice and hearing, under such rules as he may prescribe, shall ascertain the legal heirs of such decedent, and his decision thereon shall be final and conclusive."

The object of this statute is to grant to the Secretary of the Interior exclusive jurisdiction to determine heirship of deceased allotees during the entire 25-year period of the trusteeship.

This has been the interpretation which the Supreme Court has placed on this Act from its very inception. Mr. Justice Holmes, in the first case to arise under it[6], stated the effect of this statute in this language: "By the act of June 25, 1910, chap. 431, 36 Stat. at L. 855, Comp.Stat. 1913, § 4226, it was provided that in a case like this the death of the allottee intestate during the trust period, the Secretary of the Interior should ascertain the legal heirs of the decedent, and his decision should be final and conclusive; with considerable dis-

entertain certiorari. Toledo Scale Co. v. Computing Scale Co., 1923, 261 U.S. 399, 418, 43 S.Ct. 458, 67 L.Ed. 719; Department of Banking v. Pink, 1942, 317 U.S. 264, 266, 63 S.Ct. 233, 87 L. Ed. 254. And we have been warned repeatedly that,—even under the most favorable circumstances,—denial of certiorari is not an approval of the decision of the lower courts. United States v. Carver, 1923, 260 U.S. 482, 490, 43 S.Ct. 181, 67 L.Ed. 361; Dupont v. Deputy, 1940, 308 U.S. 488, 500, 60 S.Ct. 363, 84 L.Ed. 416. And see the statement of Mr. Justice Frankfurter in State of Maryland v. Baltimore Radio Show, Inc., 1950, 338 U.S. 912, 918, 70 S.Ct. 252. On the dissatisfaction with the procedure, see, Fowler H. Harper and Alan S. Rosenthal: An Appraisal of Certiorari, 1950, 99 Pennsylvania Law Review, p. 592.

But it is doubtful that this would have been the case here. So a procedural misstep prevented a final and conclusive determination of important rights affecting a whole band of Indian wards of the Government. And had not the Secretary of Interior ultimately recognized the rights of all the Mission Indians, an injustice might have resulted.

2. 25 U.S.C.A. § 345.

3. United States v. Payne, 1924, 264 U.S. 446, 44 S.Ct. 352, 68 L.Ed. 782; Morrison v. Work, 1924, 266 U.S. 481, 490, 45 S.Ct. 149, 69 L.Ed. 394; Arenas v. United States, 1944, 322 U.S. 419, 429–430, 64 S.Ct. 1090, 88 L.Ed. 1363.

4. Gerard v. United States, 9 Cir., 1948, 167 F.2d 951.

5. 25 U.S.C.A. § 372.

6. Hallowell v. Commons, 1916, 239 U.S. 506, 36 S.Ct. 202, 203, 60 L.Ed. 409. See, United States v. Bowling, 1921, 256 U.S. 484, 41 S.Ct. 561, 65 L.Ed. 1054; First Moon v. White Tail and United States, 1926, 270 U.S. 243, 46 S.Ct. 246, 70 L.Ed. 565; Caesar v. Krow, 1918, 71 Okl. 233, 176 P. 927, 930; Redeagle v. Channing, 1930, 146 Okl. 288, 294 P. 93.

cretion as to details. This act restored to the Secretary the power that had been taken from him by acts of 1894 and February 6, 1901, chap. 217, 31 Stat. at L. 760, Comp. Stat.1913, § 4214. McKay v. Kalyton, 204 U.S. 458, 468, 27 S.Ct. 346, 51 L.Ed. 566, 570. It made his jurisdiction exclusive in terms, it made no exception for pending litigation, but purported to be universal, and so to take away the jurisdiction that for a time had been conferred upon the courts of the United States."

In view of the discussion to follow, it is interesting to note that in the case just cited, as in the case before us, the action sought to establish the equitable title of the plaintiff to the allotment made to a member of the Omaha Tribe. The plaintiff's complaint asserted that he was "the sole heir as against various other claims set forth in the Bill".[7] The exclusive jurisdiction of the Secretary of the Interior to determine heirship, whether asserted in the form of a claim of exclusive heirship or in the form of a superior right as against other persons, named or unnamed, was thus established early in the history of the jurisprudence of this legislation.

A case which followed it[8] indicates how consistently the Supreme Court enforces this principle. Two Indians, who had been adopted by another Indian by a decree of a Nebraska State Court, brought suit in the District Court of the United States asserting rights, *as his sole heirs,* to the land embraced in an allotment made ten years before. The action was begun before the Act of June 25, 1910[9] and its predecessor[10] were adopted. At the time of the adoption of the last statute, considerable testimony had been taken in the District Court, but no decree had been entered. The claimants and the United States transferred the action to the Secretary of the Interior, where testimony was taken which

resulted in an order in favor of the adopted children. Dissatisfied litigants then sought a mandate in the District Court to compel the Secretary of the Interior to recognize them as the allottees. Sustaining the trial court, which had declined to entertain jurisdiction, the Court held that the statute deprived all courts of jurisdiction to determine heirship, conferred exclusive jurisdiction on the Secretary of the Interior,—a jurisdiction which could not be affected by a state decree of adoption,—saying: "So far as the Nebraska decree is concerned, the mistake upon which the proposition proceeds is obvious; since, conceding the premise upon which it must rest to be well founded, it affords no ground for preventing by judicial action the exercise by the Secretary of his power to determine the legal heirs, and in doing so to ascertain the existence of the Nebraska judgment, the jurisdiction *ratione materiæ* of the court by which it was rendered, and the legal effect which it was entitled to receive under the law of Nebraska".[11]

The language of the Court means that, while the State decree could be considered by the Secretary of the Interior, he had the right to inquire into its jurisdiction and the legal effect which was to be given to it. Obviously, the State decree could have no finality, and the Secretary of the Interior was free to disregard it or to follow it as he chose.

The two statutes complement each other. The Court of Appeals for the Ninth Circuit, in attempting to correlate them, has held that the Act of 1911 "did not affect the jurisdiction conferred by the Act of 1901 in so far as it concerns suits where the trust patent was issued and the question was one of protection of an unquestioned allotment. All that had been done to the Act of 1901 was the withdrawal of heirship suits by the Act of 1910." [12]

7. Hallowell v. Commons, supra, 239 U.S. at page 507, 36 S.Ct. 202.

8. Lane v. U. S. ex rel. Mickadiet, 1916, 241 U.S. 201, 36 S.Ct. 599, 60 L.Ed. 956. And see, Hanson v. Hoffman, 10 Cir., 1940, 113 F.2d 780, 790.

9. 25 U.S.C.A. § 372.

10. Act of May 8, 1906, c. 2348, 34 Stat. 182, 25 U.S.C.A. §§ 349, 404 note.

11. 241 U.S. 210, 36 S.Ct. 602.

12. Gerard v. United States, 9 Cir., 1948, 167 F.2d 951, 954. In Bertrand v. Doyle, 10 Cir., 1929, 36 F.2d 351, 352, the Court ruled specifically that the right

## II.

### Uncontroverted Facts.

Before considering the bearing which these principles have on the problem before us, we outline the facts behind the litigation, which are not controverted.

By this action, instituted by Lee Arenas against the United States of America and Eleuteria Brown Arenas, he seeks to obtain the following relief:

(1) That the trust patent issued by the Secretary of the Interior to Eleuteria Brown Arenas, for an undivided one-half interest in the lands of Guadaloupe Arenas heretofore awarded to Lee Arenas by the judgment of this Court, be declared null and void, and the trust patent cancelled;

(2) That Arenas' equitable title to the lands be quieted against the defendants and that they be enjoined from interfering with his possession, use and enjoyment.

As a basis for this relief, his Complaint states the following facts: In 1940, Lee Arenas, to be referred to as *Arenas,* filed an action against the United States of America, under the Act of 1894,[13] for a judgment and decree declaring him to be entitled to allotments of lands in severalty, and trust patents thereto, selected by him, and by his deceased wife, Guadaloupe, his deceased father, Francisco, and his deceased brother, Simon, Arenas. The case will be referred to as the *Arenas case.* The Complaint alleged that Lee Arenas *was the sole heir at law* and next of kin of Guadaloupe, Francisco and Simon, and as such heir, was entitled, under the laws of descent and distribution of California, to allotments of, and trust patents to, the lands selected by or for them. The District Court rendered judgment as prayed for in the Complaint, adjudging and decreeing, in part, as follows:

"That plaintiff, Lee Arenas, is now the sole surviving heir at law and next of kin of each of the three above named decedents (i. e., Guadaloupe, Francisco and Simon Arenas) and as such heir at law, is entitled, under the laws of descent and distribution of California, to succeed to the estate of each of said decedents.

"That the plaintiff, Lee Arenas, is entitled to a trust patent for each and every of the above described allotments * * "

The United States appealed from the judgment and decree to the Court of Appeals for the Ninth Circuit, which affirmed it as to Lee Arenas and Guadaloupe Arenas, but changed the date of vesting, and reversed as to the claims sought to be derived from Francisco Arenas and Simon Arenas. The portions of the opinion of the Court of Appeals pertinent to the discussion are:

"We therefore hold that the appellee has inherited Guadaloupe's equitable rights under her certificate of selection for allotment and the inclusion of her name in the 1927 schedule. * * *

"That portion of the judgment which holds that the appellee is entitled to a trust patent for his allotment and for that of his wife, Guadaloupe Arenas, to be effective as of June 21, 1923, is modified so as to make the effective date May 9, 1927; and, as modified, that portion of the judgment is affirmed." [14]

After certiorari was denied by the Supreme Court [15], a copy of the judgment, properly certified, was transmitted to the Secretary of the Interior, as required by Section 345, 25 U.S.C.A.

On July 25, 1949, the United States, through its Examiner of Inheritance, issued an order declaring that the heirs at law and next of kin of Guadaloupe Arenas were Lee Arenas and Eleuteria Brown Arenas, to be referred to as *Della,* and that the two were entitled to share equally in the allotted lands of Guadaloupe Arenas, whom we shall call *Guadaloupe.*

On November 8, 1949, the United States issued a trust patent to Della, declaring

---

to determine heirship relates to all questions of heirship, during the period: "The Act clearly applies to both past and future allotments and to *all questions of heirship of the allottee arising within the trust period."* (Emphasis added.)

13. 25 U.S.C.A. § 345.

14. United States v. Arenas, 9 Cir., 1947, 158 F.2d 730, 751, 753.

15. 331 U.S. 842, 67 S.Ct. 1531, 91 L.Ed. 1853.

her the owner of an undivided one-half interest in Guadaloupe's lands.

These facts are undisputed. Only their legal implications are the subject of challenge. In this respect, the Government asserts that competent proof before the Examiner of Inheritance showed that Della had been adopted by Arenas and his wife according to Indian tribal custom, and that the adjudication of this fact and of her title to one-half of Guadaloupe's lands was made in accordance with the provisions of the law[16] and the regulations relating to the determination of heirship of deceased allotees.[17] It is not denied that the adjudication was made after due notice to Arenas and Della in accordance with these laws and regulations, and that the order has become final and conclusive upon both.

The Answer also claims that Della was not made a defendant in—the Arenas case, D.C., 60 F.Supp. 41—and that the United States did not appear for or represent her. For this reason, it is asserted (1) that the judgment in that case did not bind or conclude Della or the United States, as her representative; (2) that neither this Court, nor the Court of Appeals had jurisdiction to find and determine that Lee Arenas was *the sole heir at law* of Guadaloupe, and (3) that the subsequent adjudication by the Secretary, through the Examiner of Inheritance, of Della's co-heirship is *res adjudicata* and conclusively binding upon parties and upon this court.

In view of the discussion to follow, reference should be made to certain additional facts which appear in the record.

In the Complaint in the Arenas case, the plaintiff sought to cast back his title to June 21, 1923. This date was also chosen by him as the starting point for the 25-year trust period. His prayer read: "(g) That the trust period of twenty-five years provided in the Mission Indian Act of 1891 (26 Stat. L. 712) during which the lands allotted and reallotted to plaintiff and to Guadaloupe

Arenas, Francisco Arenas, and Simon Arenas shall remain in trust, shall begin to run from the 21st day of June, 1923."

The trial court found in accordance with this prayer: "VII. That the plaintiff, Lee Arenas, is entitled to a trust patent for each and every of the above-described allotments provided for in Section 5 of the said Act of January 12, 1891 (26 Stat. L. 712–714) the patents and each of them to be effective as of June 21, 1923, this being the date upon which the period of restriction on alienation prescribed therein shall begin to run."

The Court of Appeals affirmed this portion of the judgment. The effective date of the Arenas derivative allotment through his wife was determined to be May 9, 1927, instead of June 21, 1923.

### III.

#### *Jurisdiction as to Heirship.*

If we gauge the facts just stated by the principles declared in the cases interpreting Sections 345 and 372 of Title 25 U.S.C.A., to which reference has already been made, it becomes evident that the exclusive method for determining heirship under Section 372 applied to the situation here. The proceeding in the Arenas case sought to determine the right to an allotment, not *as of the date of the decree, but as of a prior date when the Department of the Interior should have made it—a date which the Court of Appeals ultimately fixed as May 9, 1927,*—but which Arenas claimed as of the day of the original allotment to Guadaloupe, June 21, 1923. Guadaloupe, whose allotment he claimed derivatively, was living on June 21, 1923. *She died on March 26, 1937.* The decree of the court, as modified by the Court of Appeals, dealing with the derivative title, was retrojected to the date of the selection in the May 9, 1927, schedule, the selection which was confirmed by the Court of Appeals, and that date was claimed for her allotment. Its effect was to determine rights as

---

16. 25 U.S.C.A. § 372.

17. Title 25, Code of Federal Regulations, Sec. 81.1 et seq.

they existed on that date. Axiomatically, *nemo est haeres viventis.*[18] As of June 9, 1927, the date of Guadaloupe's claimed allotment, which the Court confirmed, Arenas could not be his wife's heir. Neither could Della. So that the only thing that the Court could decree was that Arenas' wife Guadaloupe was entitled to an allotment as of May 9, 1927. The date of the effectiveness of the decree, May 9, 1927, therefore, became the starting point of the 25-year period. The issue of heirship could only have arisen at the date of Guadaloupe's death, March 26, 1937, and the exclusive right of the Department of the Interior to determine heirship began then. The District Court, by making the decree retroactive and establishing the rights to the allotment as of May 9, 1927, could not deprive the Secretary of the Interior of any portion of the rights it could exercise during the period and assume to exercise them itself. Neither could the Court of Appeals by changing the date of accrual of the allottee's rights. For the statute makes the jurisdiction of the Department of the Interior exclusive for the entire period. *And no judicial decree could transfer the jurisdiction elsewhere.* In sum, the right to exercise control over the determination of heirship is absolute and exclusive for the entire period, even if we assume, as the plaintiff contends, that the right is limited to allotments already made. For making such assumption, we must, of necessity, hold that it applies to *all* allotments, whether actually made by the Secretary or which he failed but was compelled by the Courts to make, as of a prior date. Unless the right to determine heirship is made to apply to all such allotments, *whether made voluntarily or compelled by the courts,* we would be confronted by this intolerable situation: If the Department obeys the law and makes an allotment, then, for a period of 25 years thereafter, it has the right to determine heirship. If it disobeys the law and is compelled by court action to recognize the Indian's right to an allotment as of a prior date, then its jurisdiction may be transferred to the courts for a portion of the period. Or it may be usurped altogether, if the decree were dated after the expiration of the 25-year period. The tutelage of the Department, including the determination of heirship, is exercised for the benefit of the Indian.[19] The Indian, deprived of his allotment rights who sought redress from courts in order to have his rights recognized and reinstated as of a prior date, might end up with a judgment achieving incongruous results,—a judgment, which, as in the instant case, (a) would decide the rights of the Indian allotee *as of a date long past,* the date on which, without warrant of law, his selection was denied recognition, and (b) at the same time would assume to determine heirship in the light of conditions existing *at the present,* the date of the decree. In this manner, the same court which restored the Indian's rights will also have curtailed his tutelage period. This, at first blush, might not be an undesirable result. For, during the period of denial of enjoyment of the allotment, the Secretary will have been in control of the land as part of the tribal lands. And a finding to that effect shortening the period would have a negative effect only. It would merely amount to saying that during the expired period, all the incidences of the Secretary's trusteeship, including the right to determine heirship, had been ineffective, by failure to exercise them,—consequent upon the wrongful refusal of the Secretary to recognize the allotment. But the right so lost could not be recaptured, as to the expired period, by a usurping court which had no authority to exercise it in the first instance, i. e., if the allotment had been recognized by the Secretary as of the date claimed.

In governmental affairs, under our system of separation of powers, non-exercise of a function may result in its atrophy. But it does not have the effect of transferring its exercise to another. In short,

18. 66 C.J.S., p. 4, note 97.

19. Sunderland v. United States, 1924, 266 U.S. 226, 233–234, 45 S.Ct. 64, 69 L.Ed. 259; United States v. Eastman, 9 Cir., 1941, 118 F.2d 421; Board of Commissioners of Creek County v. Seber, 1943, 318 U.S. 705, 716–717, 63 S.Ct. 920, 87 L.Ed. 1094.

resort to court action could not divest the Secretary of the right to determine heirship and vest it in the courts. Otherwise, the same court which undid the wrong would inflict one of its own by determining heirship rights *as they existed on the date of its judgment,* under conditions which had not come into being *on the date to which judgment was cast back.*

This anomaly can be avoided only by holding that, regardless of the retrospective feature of the judgment, so far as the trust patent rights to the allotment are concerned, the conditions calling for the determination of heirship *did not come into being until the judgment was entered.* And, as of that date, the right to determine heirship lay exclusively with the Secretary.

■ We are bound to interpret statutes reasonably.[20] The interpretation for which the plaintiff contends would result in a patent absurdity. For it is inconceivable that a Court, given by the Congress authority to remedy the refusal of an executive officer to act, should, as a condition for so doing, perpetrate another wrong under the guise of doing complete justice. Once it is conceded that the Court, in the Arenas case, could, as *requested by him,* establish June 21, 1923, as the vesting date of Guadaloupe's allotment, it must follow,

as a corollary, that *the right to determine heirship* must also be governed by the conditions existing on that date. And, we repeat, on that date, Guadaloupe was living and no one, not even the Department, had a right to determine *who her heirs at law were.* Such determination, if made, was no more binding on the Secretary than the anticipatory adoption decree of a state court.[21]

In attempting to harmonize Sections 345 and 372, the only reasonable solution lies in holding that it applies to all cases where the vesting date of the allotments, whether actually made by the Secretary or compelled by court action, precedes the death of the allotee. It does so here. Under a different interpretation, we would have the anomaly of an Indian insisting, as Arenas did, that his right to the allotment be established as of a prior date,— the date on which, but for the wrongful act of the Secretary, he would have received it, and that, in like manner, the tutelage period be made effective as of that date, but, nevertheless, maintaining that during the elapsed period as to which his rights were restored, one of the most important incidences of tutelage, the right to determine heirship, granted exclusively by the Congress to the Secretary, ceased

20. In applying this norm, we are to avoid absurd results or even unreasonable ones "at variance with the policy of the legislation as a whole". Ozawa v. United States, 1922, 260 U.S. 178, 194, 43 S.Ct. 65, 67, 67 L.Ed. 199. And see, United States v. Katz, 1926, 271 U.S. 354, 359, 46 S.Ct. 513, 70 L.Ed. 986; Haggar Company v. Helvering, 1940, 308 U.S. 389, 394, 60 S.Ct. 337, 84 L.Ed. 340; United States v. American Trucking Ass'ns, 1940, 310 U.S. 534, 543, 60 S.Ct. 1059, 84 L.Ed. 1345.

"Ambiguities in statutory language should not be resolved so as to imperil a substantial right which has been granted." R.F.C. v. Prudence Securities Advisory Group, 1941, 311 U.S. 579, 582, 61 S.Ct. 331, 333, 85 L.Ed. 364.

"The purpose of Congress is a dominant factor in determining meaning." United States v. C.I.O., 1948, 335 U.S. 106, 112, 68 S.Ct. 1349, 1352, 92 L.Ed. 1849.

"The policy as well as the letter of the law is a guide to decision." Markham v. Cabell, 1945, 326 U.S. 404, 405, 409, 66 S.Ct. 193, 195, 90 L.Ed. 165.

21. Lane v. U. S. ex rel. Mickadiet, 1916, 241 U.S. 201, 36 S.Ct. 599, 60 L.Ed. 956. It is true that the Court of Appeals put over the vesting date to May 9, 1927, the date on which Arenas claimed that the original allotments made both to him and to his wife on June 21, 1923, were reallotted. *Guadaloupe* was living on both dates and did not die until March 26, 1937. The trial court had chosen the date of the original allotment as the vesting date. The Court of Appeals by choosing a later date for vesting did not change the situation. Whatever allotment rights were hers on that date must have stemmed from the selection she made *while living.* La Rocque v. United States, 1915, 239 U.S. 62, 66, 36 S.Ct. 22, 60 L.Ed. 147; United States ex rel. Jump v. Ickes, 1940, 73 App.D.C. 141, 117 F.2d 769, 770–772.

to exist, or could be assumed by a court. In effect, this would call for sanctioning. the theory that, while the Court had the right to restore the Indian's rights to the original date, it could, by the same decree, assume to determine heirship,—as to which exclusive jurisdiction was vested by the Congress in the Secretary for the entire period of 25 years, including the elapsed portion. The brief period still remaining would mean little, once the primary heirship rights have been established during the expired period by a usurping authority.

Such interpretation would destroy the effectiveness of the tutelary control in all matters of heirship which the Congress has placed in the Secretary, as it had the undoubted right to do. We cannot agree. On the contrary, we are of the view that the Court in the Arenas case could determine only that Guadaloupe was entitled to an allotment. It was bound to leave the heirship rights of Arenas and Della to be determined in the manner provided by Section 372 and the regulations carrying it into effect. In brief, the Court, in the Arenas case, had no jurisdiction of the subject matter which it assumed to determine, the relationship of Arenas and others not before the Court to Guadaloupe's allotment as her heirs at law. Such lack

of jurisdiction appears on the face of the judgment roll. The judgment to that extent is, therefore, void on its face,—"a dead limb upon the judicial tree, which should be lopped off if the power so to do exists", because, "it can bear no fruit to the plaintiff, but is a constant menace to the defendant".[22]

We add that the menace is greater to one who, like Della, was not even a party to the void judgment, by which it is sought to bind her. This fact calls for an approach to the problem from a different angle.

## IV.

## The Attempted Adjudication of Heirship.

The complaint in the Arenas case alleged that Arenas was the sole heir at law of his deceased wife Guadaloupe. He sought to have that fact determined and to have it adjudged that, as her sole heir, he was unlawfully excluded from the allotment to which he was allegedly entitled under the laws of succession of California. The trial court made a finding to this effect, which was sustained by the Court of Appeals. But the complaint did not contain an allegation,—as did the complaint in Hallowell v. Commons,[23]—*that there were*

22. See, People v. Greene, 1887, 74 Cal. 400, 405, 16 P. 197, 199; People v. Davis, 1904, 143 Cal. 673, 675, 77 P. 651;. Estate of Smead, 1938, 12 Cal.2d 20, 25, 82 P.2d 182; Woods Bros. Const. Co. v. Yankton County, 8 Cir., 1931, 54 F.2d 304, 309. The power may be exercised collaterally and at any time, and even by the court, *sua sponte.* Restatement, Judgments, §§ 10, 11; Freeman on Judgments, 5th Ed., 1925, § 322, p. 645. In re Sawyer, 1887, 124 U.S. 200, 221–222, 8 S.Ct. 482, 31 L.Ed. 402; Hatch v. Ferguson, 9 Cir., 1895, 68 F. 43, 45–46; State of Missouri ex rel. and to Use of Stormfeltz v. Title Guaranty & Surety Co., 8 Cir., 1938, 72 F.2d 595, 598; Mitchell v. Village Creek Drainage District, 8 Cir., 1946, 158 F.2d 475, 477; Winona Oil Co. v. Barnes, 1921, 83 Okl. 248, 200 P. 981, 985; Title Guaranty & Surety Co. v. Foster, 1922, 84 Okl. 291, 203 P. 231, 235–236.

23. 239 U.S. 506, 507, 36 S.Ct. 202, 60 L. Ed. 409. Although jurisdiction as to subject matter and persons exists, a

judgment is void if there is "want of jurisdiction with respect of the power of the court to render the particular judgment or decree". 49 C.J.S., Judgments, § 421, p. 825. See also, Winona Oil Co. v. Barnes, supra, Title Guaranty & Surety Co. v. Foster, supra, cited in Note 22, supra.

To quote from In re Woolley's Estate, 1922, 96 Vt. 60, 117 A. 370, 371: "Generally speaking, when a court has jurisdiction of the parties and the subject-matter, its judgment and decrees, however erroneous, cannot be impeached in a collateral proceeding. But to effect this result, the court must have authority to render the particular judgment or decree that is assailed; or, in other words, orders or judgments which the court *has not the power under any circumstances to make or render are void,* and their nullity can be asserted in any collateral proceeding where they are relied on in support of a claim. * * * *This lack of authority to make or render a particular order or judgment is akin to*

*other persons claiming heirship.* Heirship is "a legal right, regulated by law to be enjoyed subject to the conditions prescribed by statute".[24] The right to establish heirship, under any statute, *is a personal one.*

 No binding judgment can be rendered against a person involving his personal status or rights,—such as legitimacy or heirship,—unless he is a party to the action,[25] or is before the court through representation by others.[26] Della, as Guadaloupe's heir at law, was not before the court. She is a stranger to the record. Her rights of heirship were not asserted in any pleading filed in the case and were not adjudicated by the court. She cannot be deprived of them by a negative finding that Arenas is "the sole heir", when neither she nor the United States Government representing her *as an heir,* was before the court to assent or defend her heirship rights. The complaint in the Arenas case did not challenge her heirship by any direct allegation.

*lack of jurisdiction of the subject-matter."* (Emphasis added)

This is also the federal rule: "Though the court may possess jurisdiction of a cause, and of the subject-matter, and of the parties, it is still limited in its modes of procedure and in the extent and character of its judgments. * * * The doctrine stated by counsel is only correct when the court proceeds, *after acquiring jurisdiction of the cause, according to the established modes governing the class to which the case belongs, and does not transcend, in the extent or character of its judgment, the law which is applicable to it."* Windsor v. McVeigh, 1876, 93 U.S. 274, 282–283, 23 L.Ed. 914. (Emphasis added) And see, Ex parte Lange, 1874, 18 Wall. 163, 176–178, 21 L. Ed. 872; United States, to Use of Wilson, v. Walker, 1883, 109 U.S. 258, 266–267, 3 S.Ct. 277, 27 L.Ed. 927; Hatch v. Ferguson, supra, Note 22, 68 F. at pages 45–46; Gelinas v. Buffum, 9 Cir., 1931, 52 F.2d 598, 600; Aufdenkamp v. L'Herrison, 9 Cir., 1932, 56 F.2d 344, 346.

24. 39 C.J.S., Heir or Heirs p. 887. The word "heirs" applies "to persons appointed by law to succeed to the estate in case of intestacy; but it is frequently used to designate those persons who answer this description at the death of a testator. Ordinarily it is a word of limitation." Crutcher v. Joyce, 10 Cir., 1943, 134 F.2d 809, 815. And see, Heir, 39 C.J.S., pp. 881–886.

25. Restatement, Judgments, §§ 75, 93; Weyerhauser Timber Co. v. Marshall, 9 Cir., 1939, 102 F.2d 78, 81–82; (Decree of state court determining illegitimacy, not binding on deputy commissioner, adjudicating claim of same child under Longshoremen's and Harbor Workers' Compensation Act, § 13(a–c), 33 U.S. C.A. § 913(a–c). In Mudd v. Perry, 1925, 108 Okl. 168, 235 P. 479, the court held that a decree in probate distribut-

ing an estate to the husband, an Indian, and to certain collateral heirs of his deceased wife, although necessarily finding that the claimants were collateral heirs, was not conclusive against others, who, in a proceeding to determine heirship, sought to establish a right to participate as heirs. The Court said: "In the instant case, we have the alleged husband of the decedent coming into the same case where other alleged heirs made application for partial distribution, and also asking that distribution be made to himself. A decree of any sort ordering a distribution of funds, such as here necessarily requires a finding that the person to whom it is directed to be made is in fact an heir. * * * But in this statute there is nothing that makes such finding or judgment conclusive against the world as a decree of heirship as under the subsequent sections of the statute, when final, is. The husband, if found and determined to be such, would be entitled to one-half of the estate; it being conceded by all that Lucy Lotson Perry was survived by no descendants. The other one-half would go to collaterals under our statute. Section 11301, subd. 2 [84 O.S.1941 § 213]. *The determination that these petitioners should share in the estate would under this proceeding not be conclusive as against some one else who might, on determination of heirship in the strict sense of the term, establish a right to participate as an heir."* 235 P. at page 481. (Emphasis added.)

So here, even if it be admitted that the Court could find that Arenas was *an heir,* it could not bind Della, a stranger to the record, by a finding that Arenas was *the sole heir,* so as to affect her rights accruing prior to the adjudication. See, 49 C.J.S., Judgments, § 414.

26. Restatement, Judgments, §§ 26, 80.

Hence, even if the Court, in the Arenas case, had jurisdiction of the subject matter, which it demonstrably did not have, it could not, and did not, exercise it against Della, for the reason that, in the capacity as one of Guadaloupe's heirs she was not before the court and her rights in that respect were not in issue before it. She was not an adversary in the proceeding.[27] And the presence of the United States Government in court, in another capacity, as a trustee of Indian land resisting Arenas' claim,—cannot be enlarged into an appearance for Della by the application of any doctrine of "virtual representation".[28]

To sum up what precedes: The subject matter which the court in the Arenas case undertook to adjudicate, ancillarily and by indirection, was Della's heirship. The person as to whom it undertook to determine it was Della. Unfortunately for the claimed conclusiveness of its judgment, the court had no jurisdiction of the subject matter, because (a) the determination of heirship had been lodged solely in the Department of the Interior, and (b) the court had no jurisdiction over Della, for she was not named, and was not before the court as an adversary in the proceeding. It is axiomatic that the district courts of the United States are courts of limited jurisdiction. No one can confer jurisdiction upon them, if it does not exist. And it may be inquired into and questioned, even by the litigant invoking it in the first instance, and despite the most solemn stipulations.[29]

## V.

### Res Judicata.

To avoid the inescapable effect of these principles, the plaintiff calls to his aid (a) the accepted theory that the federal courts on their equity side, having acquired jurisdiction, will exercise it as to the entire controversy,[30] and (b) that a judgment is a bar not only as to every matter adjudicated, but as to such other matters as might properly have been determined.[31]

But the first of these principles (a) requires that the court have jurisdiction to determine the incidental matter which it undertook to determine. Where no such jurisdiction exists, the collateral determination is not conclusive as to subsequent litigation.[32]

The second (b) is subject to a similar limitation and the additional one that the collateral issue so determined must affect the parties to the suit and be essential to the determination of their rights. The Restatement gives the following as an il-

27. Ya-koot-sa v. United States, 9 Cir., 1920, 262 F. 398. And see, Standard Oil Company v. J. P. Mills Organization, 1935, 3 Cal.2d 128, 139–140, 43 P.2d 797.

28. Cf. Arndt v. Griggs, 1890, 134 U.S. 316, 320, 10 S.Ct. 557, 33 L.Ed. 918; American Land Co. v. Zeiss, 1910, 219 U.S. 47, 60–64, 31 S.Ct. 200, 55 L.Ed. 82; Wilhelm v. Consolidated Oil Corp., 10 Cir., 1936, 84 F.2d 739, 746–747. And see, County of Los Angeles v. Winans, 1910, 13 Cal.App. 234, 245–247, 109 P. 640; Bernhard v. Wall, 1921, 184 Cal. 612, 194 P. 1040; Garside v. Garside, 1947, 80 Cal.App.2d 318, 327–328, 181 P.2d 665.

29. Bors v. Preston, 1888, 111 U.S. 252, 255, 4 S.Ct. 407, 28 L.Ed. 419; McNutt v. General Motors Acceptance Corp., 1936, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135; KVOS, Inc., v. Associated Press, 1936, 299 U.S. 269, 57 S.Ct. 197, 81 L.Ed. 183; Clark v. Paul Gray, Inc., 1939, 306 U.S. 583, 59 S.Ct.

744, 83 L.Ed. 1001; Barnett v. Mayes, 10 Cir., 1930, 43 F.2d 521; Lion Mfg. Corp. v. Chicago Flexible Shaft Co., 7 Cir., 1939, 106 F.2d 930; Atchison, Topeka & S. F. Co. v. Francom, 9 Cir., 1941, 118 F.2d 712.

30. 35 C.J.S., Federal Courts, § 11; Mullen v. Fitz Simons & Connell Dredge & Dock Co., 7 Cir., 1949, 172 F.2d 601, 604.

31. 50 C.J.S., Judgments, § 657; Restatement, Judgments, Secs. 47, 48; Cromwell v. County of Sac, 1877, 94 U.S. 351, 352–353, 24 L.Ed. 195; Grubb v. Public Utilities Commission, 1930, 281 U.S. 470, 478–479, 50 S.Ct. 374, 74 L.Ed. 972; Fishgold v. Sullivan Corp., 1946, 328 U.S. 275, 282–283, 374, 66 S.Ct. 1105, 90 L.Ed. 1230.

32. Restatement, Judgments, § 71; Railroad Commission of California v. Pacific Gas & Electric Co., 1938, 302 U.S. 388, 58 S.Ct. 334, 82 L.Ed. 319; Hillsborough v. Cromwell, 1946, 326 U.S. 620, 626–629, 66 S.Ct. 445, 90 L.Ed. 358.

lustration of this added limitation: "Thus, if a woman brings an action against a man to recover for services, and he defends on the ground that she is his wife, the determination of the question whether she is his wife is not conclusive in a subsequent action brought by one of them against the other for divorce or for annulment of the marriage, *if the first court had no jurisdiction to determine these matters.*"[33] (Emphasis added.)

In a New York case, a finding that the parties to an action were married to each other, made in an action for separate maintenance brought by the wife, though put in issue by the pleadings, and decided against her upon the ground that she had failed to prove a statutory ground for separate maintenance, was held not to bar the assertion by her husband in a subsequent action for annulment that no marriage existed.[34]

The principle which permits total adjudication, as it relates to federal courts, merely means this: "Where a court of equity has obtained jurisdiction over some portion of a controversy, it may, and will in general, proceed to decide the whole issues and award complete relief, even where the rights of parties are strictly legal, and the final remedy granted is of the kind which might be conferred by a court of law." [35]

The application of this doctrine presupposes that a court of equity having taken jurisdiction, will, incidental to the adjudication of the equitable rights, determine strictly legal rights also. The entire idea stems from the desire of courts to prevent parties to a suit from trying their controversies piece-meal. But its application to a particular case presupposes three conditions: (a) that the court had jurisdiction over the parties, (b) that the

---

33. Restatement, Judgments, § 71, comment (e), p. 329. See, Austin Wakeman Scott, Collateral Estoppel By Judgment, 1942, 56 Harvard Law Review, 1.

34. Karameros v. Luther, 1938, 279 N.Y. 87, 17 N.E.2d 779, 781. See, 30 Am. Jur., Judgments, § 183; Comment on Mudd v. Perry, supra, Note 25. Commissioner of Internal Revenue v. Sunnen, 1948, 333 U.S. 591, 597–598, 68 S. Ct. 715, 719, 92 L.Ed. 898, states that the effect of a collateral finding is limited, even between the same parties, if in the subsequent litigation the cause of action is not the same: "But where the second action between the same parties is upon a different cause or demand, the principle of *res judicata* is applied much more narrowly. In this situation, the judgment in the prior action operates as an estoppel, not as to matters which might have been litigated and determined, but 'only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered.' Cromwell v. County of Sac, supra, 94 U.S. 353, [24 L.Ed. 195]. And see Russell v. Place, 94 U.S. 606, 24 L.Ed. 214; Southern Pacific R. Co. v. United States, 168 U.S. 1, 48, 18 S.Ct. 18, 27, 42 L.Ed. 355; Mercoid Corp. v. Mid-Continent Inv. Co., 320 U.S. 661, 671, 64 S.Ct. 268, 273, 88 L.Ed. 376. Since the cause of action involved in the second proceeding is not swallowed by the judgment in the prior suit, the parties are free to litigate points which were not at issue in the first proceeding, *even though such points might have been tendered and decided at that time.*" (Emphasis added.) So here, even if it be assumed that the parties were the same as in the Arenas suit, which they were not, the cause of action was not the same. There, there was litigated the right of Arenas and Guadaloupe to an allotment wrongfully denied by the Secretary. In the case before us, we are concerned with the heirship rights of Arenas and Della, who was not before the court, either in person, or through representation by another, to the lands awarded derivatively by the decree in the Arenas case. To this situation, the language of Mr. Justice Field in Cromwell v. County of Sac, supra, applies: "On principle, a point not in litigation in one action cannot be received as conclusively settled in any subsequent action upon a different cause, because it might have been determined in the first action." 94 U.S. p. 351, 356, 24 L.Ed. 195.

In the case at bar, the right to determine heirship did not arise until Guadaloupe's right to her allotment was determined, and the cause of action based on heirship did not arise until after the first decree had been made confirming Guadaloupe's allotment.

35. Hartford Accident & Indemnity Co. v. Southern Pacific Co., 1927, 273 U.S. 207, 217–218, 47 S.Ct. 357, 360, 71 L.Ed. 612.

incidental matter it undertook to decide was necessary to the main decision, and (c) that the court was not excluded by some statutory or legal rule from determining it.

█ Here, as is palpably apparent, the Congress of the United States has given to a special tribunal the sole power to determine heirship,—a power which is all-embracing.[36] And Della, against whom it is sought to assert the ancillary finding that Arenas was Guadaloupe's sole heir was not before the court which made the finding. The absence of jurisdiction as to subject matter and parties robs the judgment of conclusive validity against the claims later asserted by Della before a special tribunal in the only proceeding authorized for the purpose,—a proceeding in which Arenas was an adversary with notice. There, his claim of sole heirship through which he seeks to deprive Della of her share in Guadaloupe's allotment was litigated and determined, resulting in a judgment, which has become final. In carrying in effect this judgment, a trust patent was issued to Della for an undivided one-half interest to the lands of Guadaloupe Arenas.

For the reasons already given, the validity of this trust patent is not affected by the judgment of the court in the Arenas case, which purported to award to him all the lands previously allotted to Guadaloupe Arenas.

Judgment will, therefore, be for the defendant that plaintiff take nothing by his complaint.