## LA ROQUE *v.* UNITED STATES.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 240. Argued October 15, 18, 1915.—Decided November 8, 1915.

The Nelson Act of January 14, 1889, c. 24, 25 Stat. 642, for allotment to Chippewas of the White Earth Indian Reservation contemplated only selections on the part of living Indians acting for themselves or through designated representatives. There was no displacement of the usual rule that incidents of tribal membership, like the membership itself, are terminated by death.

While not conclusive, the construction given to an act of Congress relative to Indian allotments, in the course of its actual execution by the Secretary of the Interior, is entitled to great respect and ought not to be overruled without cogent and persuasive reasons.

The fact that the act provided for a census of the Indians is not conclusive that the allotments were to be made to all those included in the census. *Fairbanks* v, *United States*, 223 U. S. 215.

The act of March 3, 1891, c. 561, 26 Stat. 1099, establishing a six year limitation for actions by the United States to annul patents, has been construed as being part of the public land laws and refers to patents issued for public lands and does not relate to suits to annul trust patents for allotments of reserved Indian lands.

The act of April 23, 1904, c. 1489, 33 Stat. 297, limiting and defining the authority of the Secretary of the Interior to correct mistakes in, and to cancel, trust patents for Indian allotments does not restrict or define the powers or jurisdiction of the court to cancel such a patent.

198 Fed. Rep. 645, affirmed.

THE facts, which involve the construction of the Nelson Act of 1889 and an allotment 'to a Chippewa Indian in the White Earth Indian Reservation in Minnesota, are stated in the opinion.

*Mr. J. T. Van Metre* for appellant.

*Mr. Assistant Attorney General Knaebel,* with whom *Mr. S. W. Williams* was on the brief, for the United States.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

This is a suit to cancel a so-called trust patent for an allotment in the White Earth Indian Reservation in Minnesota on the ground that the allotment was made inadvertently and in contravention of the act of January 14, 1889, c. 24, 25 Stat. 642, known as the Nelson Act. In the Circuit Court there was a decree dismissing the bill

upon the merits and this was reversed by the Circuit Court of Appeals with instructions to enter a decree according to the prayer of the bill subject to a qualification not here material. 198 Fed. Rep. 645.

The facts are not in dispute and are these: Vincent La Roque, in whose name the trust patent issued, was a Chippewa Indian born in 1883 of parents residing on the White Earth Reservation and was among those whose names were included in the census of Minnesota Chippewas made under the Nelson Act. Had he lived he would have been entitled to take an allotment under that act. He died shortly after 1889 without an allotment being selected by or for him. Thereafter an application in his name for the allotment in question was presented to the allotting officers, and upon this application the allotment was made and the trust patent was issued, both in his name, as if the selection were made while he was living. Henry La Roque, the defendant, is his father and as sole heir claims the land under the allotment and trust patent.

Whether the Nelson Act contemplated that allotments should be made on behalf of Indians otherwise entitled thereto but who should die without selecting or receiving them is the principal question for decision. The regulations and decisions of the Secretary of the Interior, under whose supervision the act was to be administered, show that it was construed by that officer as confining the right of selection to living Indians and that he so instructed the allotting officers. While not conclusive, this construction given to the act in the course of its actual execution is entitled to great respect and ought not to be overruled without cogent and persuasive reasons. *United States v. Moore*, 95 U. S. 760, 763; *Hastings & Dakota R. R. v. Whitney*, 132 U. S. 357, 366; *United States v. Hammers*, 221 U. S. 220, 225, 228; *Logan v. Davis*, 233 U. S. 613, 627. Not only so, but it receives additional force from its adoption by the Circuit Court of Appeals for the Eighth Circuit

in *Woodbury* v. *United States*, 170 Fed. Rep. 302, where it was said by District Judge Amidon in speaking for that court: "Until the allotment was made, Woodbury's right was personal—a mere float—giving him no right to any specific property. This right, from its nature, would not descend to his heirs. They, as members of the tribe, were severally entitled to their allotments in their own right. To grant them the right of their ancestor, in addition to their personal right, would give them an unfair share of the tribal lands. The motive underlying such statutes forbids such a construction."

The Nelson Act embodied a plan for securing a cession by the several bands of Chippewa Indians in Minnesota of all reservations occupied by them except portions of the White Earth and Red Lake reservations required to make allotments, for removing to the White Earth Reservation all the bands save those on the Red Lake Reservation, for making allotments in severalty in the unceded lands, and for disposing of the ceded lands, placing the net proceeds at interest and distributing them in severalty at the end of fifty years. Section 1 required that a census be made of each tribe or band for the purpose of ascertaining whether the proper number of Indians assented to the cession and "of making the allotments and payments" contemplated; and section 3 directed that, following the census, the cession and the removal to the White Earth Reservation, allotments in severalty be made, as soon as practicable, to the Red Lake Chippewas in the Red Lake Reservation, and to the others in the White Earth Reservation, "in conformity with" the general allotment act of February 8, 1887, c. 119, 24 Stat. 388, subject to a proviso that any Indian living on any of the ceded reservations might, in his discretion, take his allotment therein instead of moving to the White Earth Reservation.

The general allotment act of 1887, in conformity with which the Chippewa allotments were to be made, after

authorizing a survey of the reservation to be allotted, provided for an allotment in severalty of a designated area "to any Indian located thereon," and then directed that all allotments "be selected by the Indians, heads of families selecting for their minor children" and the agents selecting for orphan children, and that "if any one entitled to an allotment shall fail to make a selection within four years . . ., the Secretary of the Interior may direct a selection for such Indian" to be made by an agent.

We think the terms of the general act contemplated only selections on the part of living Indians acting for themselves or through designated representatives. The express provision for selections in behalf of children and of Indians failing to select for themselves and the absence of any provision in respect of Indians dying without selections are persuasive that no selections in the right of the latter were to be made. In other words, as to them there was no displacement of the usual rule that the incidents of tribal membership, like the membership itself, are terminated by death. See *Gritts* v. *Fisher*, 224 U. S. 640, 642; *Oakes* v. *United States*, 172 Fed. Rep. 305, 307. It is upon this view that the execution of the general act and other similar acts has proceeded. 30 Land Dec. 532; 40 *Id*. 9; 42 *Id*. 446, 582; *Woodbury* v. *United States*, 170 Fed. Rep. 302.

As calling for a different construction of the Nelson Act the defendant relies upon the provision for a census of the Indians and upon the report of the negotiations with them resulting in the cession contemplated by the act, the contentions advanced being that the provision for a census makes it clear that the census when completed was to be accepted as finally determining who were to receive allotments, and that the report of the negotiations shows that the Indians gave their assent to the cession in the belief that the right to select and receive an allotment would not

be terminated by death but would pass to the heirs of the deceased. We are unable to assent to either contention. While the act directed that a census be made "for the purpose," among others, "of making the allotments" contemplated, we think this meant nothing more than that the census should serve as a preliminary guide in ascertaining to whom allotments should be made. There was no direction that it be treated as controlling—or that allotments be made to all whose names appeared therein or only to them. The work of allotment could not be undertaken at once. The cession was not to be effective until approved by the President. Many of the Indians were to be removed from the ceded reservations to the White Earth Reservation, and much other work was required to prepare the way. So, it must have been contemplated that many changes would occur in the membership of the several bands through deaths and births before the allotments could be made. In *Fairbanks* v. *United States,* 223 U. S. 215, we held that children born into the bands after the census were entitled to allotments, although not listed in it, and we perceive no reason for giving the census any greater effect in this case than was given to it in that. No doubt it is to be accepted as an authorized listing of the members of the several bands who were living when it was made, but it has no other bearing in cases like the present. The contention that the Indians understood that the right to select and receive an allotment would not be terminated by death but would pass to the heirs of the deceased is based upon excerpts from addresses made to the Indians by the Commissioners representing the Government in the negotiations. Even when read apart from the context these excerpts afford little basis for the contention and when read with the context they make against the contention rather than for it. The real effect of what was said was that on the death of any Indian "after receiving an allotment" the land would pass

to his heirs, which is quite consistent with our construction of the act.

The suit was brought between six and seven years after the date of the trust patent, and because of this it is urged that the suit was barred by § 8 of the act of March 3, 1891, c. 561, 26 Stat. 1099 (see also c. 559, p. 1093), which provides that "suits by the United States . . . to vacate and annul patents hereafter issued shall only be brought within six years after the date of the issuance of such patents." This contention must be overruled upon the authority of *Northern Pacific Ry.* v. *United States,* 227 U. S. 355, 367, where it was held that this section is part of the public land laws and refers to patents issued for public lands of the United States. This trust patent was not issued for public lands of the United States but for reserved Indian lands to which the public land laws had no application. And it may be well to observe in passing that the Circuit Court of Appeals directed that there be embodied in the decree a provision that the Government holds the lands in the same way it held them before the patent was issued, that is, as reserved Indian lands.

Another objection to the suit is predicated upon the act of April 23, 1904, c. 1489, 33 Stat. 297, limiting and defining the authority of the Secretary of the Interior to correct mistakes in and to cancel trust patents for Indian allotments, but of this it is enough to say that we concur in the view of the Circuit Court of Appeals that this section, which makes no reference to the courts, discloses no purpose to restrict or define their jurisdiction or powers in suits such as this.

*Decree affirmed.*

MR. JUSTICE MCREYNOLDS took no part in the consideration or decision of this case.