UNITED STATES ex rel. JUMP et al. v.
ICKES, Secretary of Interior of
United States.

No. 7666.

United States Court of Appeals for the
District of Columbia.

Argued Nov. 15, 1940.

Decided Dec. 30, 1940.

Petition for Rehearing Denied Feb. 15, 1941.

Seth Richardson, of Washington, D. C.,
and Neal E. McNeill, of Tulsa, Okl., for
appellants.

Nathan R. Margold, Solicitor, Department of Interior, Frederic L. Kirgis, First

Asst. Solicitor, and H. Byron Mock, Asst. Solicitor, Department of Interior, all of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and VINSON and EDGERTON, Associate Justices.

GRONER, C. J.

Appellants, Josephine Jump and James Strikeaxe, are the children of Bennie Strikeaxe, a deceased Osage Indian. They instituted this mandamus proceeding against the Secretary of the Interior to establish, as sole heirs of their father, a claim to an allotment of the tribal lands and funds, as provided in the Osage Allotment Act of June 28, 1906,[1] and which they assert was unlawfully withheld. Prior to the passage of the Act, title to the lands of the Osages was held by the United States in trust for the tribe as a whole. No right or incident of tribal membership was inheritable or alienable, for the membership of each individual and the right to share in the tribal community property arose by birth and terminated by death.[2]

[1] 34 Stat. 539:
"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That the roll of the Osage tribe of Indians, as shown by the records of the United States in the office of the United States Indian agent at the Osage Agency, Oklahoma Territory, as it existed on the first day of January, nineteen hundred and six, and all children born between January first, nineteen hundred and six, and July first, nineteen hundred and seven, to persons whose names are on said roll on January first, nineteen hundred and six, and all children whose names are not now on said roll, but who were born to members of the tribe whose names were on the said roll on January first, nineteen hundred and six, including the children of members of the tribe who have, or have had, white husbands, is hereby declared to be the roll of said tribe and to constitute the legal membership thereof: *Provided*, That the principal chief of the Osages shall, within three months from and after the approval of this Act, file with the Secretary of the Interior a list of the names which the tribe claims were placed upon the roll by fraud, but no name shall be included in said list of any person or his descendants that was placed on said roll prior to the thirty-first day of December, eighteen hundred and eighty-one, the date of the adoption of the Osage constitution, and the Secretary of the Interior, as early as practicable, shall carefully investigate such cases and shall determine which of said persons, if any, are entitled to enrollment; but the tribe must affirmatively show what names have been placed upon said roll by fraud; but where the rights of persons to enrollment to the Osage roll have been investigated by the Interior Department and it has been determined by the Secretary of the Interior that such persons were entitled to enrollment, their names shall not be stricken from the roll for fraud except upon newly discovered evidence; and the Secretary of the Interior shall have authority to place on the Osage roll the names of all persons found by him, after investigation, to be so entitled, whose applications were pending on the date of the approval of this Act; and the said Secretary of the Interior is hereby authorized to strike from the said roll the names of persons or their descendants which he finds were placed thereon by or through fraud, and the said roll as above provided, after the revision and approval of the Secretary of the Interior, as herein provided, shall constitute the approved roll of said tribe; and the action of the Secretary of the Interior in the revision of the roll as herein provided shall be final, and the provisions of the Act of Congress of August fifteenth, eighteen hundred and ninety-four, Twenty-Eighth Statutes at Large, page three hundred and five, granting persons of Indian blood who have been denied allotments the right to appeal to the courts, are hereby repealed as far as the same relate to the Osage Indians; and the tribal lands and tribal funds of said tribe shall be equally divided among the members of said tribe as hereinafter provided.
*    *    *    *    *
"Sec. 6. That the lands, moneys, and mineral interests, herein provided for, of any deceased member of the Osage tribe shall descend to his or her legal heirs, according to the laws of the Territory of Oklahoma, or of the State in which said reservation may be hereinafter incorporated, except where the decedent leaves no issue, nor husband nor wife, in which case said lands, moneys, and mineral interests must go to the mother and father equally."

[2] Taylor v. Tayrien, 10 Cir., 51 F.2d 884, 887; Wilbur v. United States ex rel. Kadrie, 281 U.S. 206, 216, 50 S.Ct. 320, 74 L.Ed. 809; Gritts v. Fisher, 224 U.S. 640, 642, 32 S.Ct. 580, 56 L.Ed. 928; Sizemore v. Brady, 235 U.S. 441, 446, 35 S.Ct. 135, 59 L.Ed. 308; La Roque v. United States, 239 U.S. 62, 66, 36 S.Ct. 22, 60 L.Ed. 147.

The purpose of the 1906 Act was to change the rule and to allot the surface absolutely to the individual members and to make like distributions of certain accumulated funds. Title to the minerals was to be retained by the United States in trust for the tribe. Congress provided in the first section of the Act "that the roll of the Osage tribe of Indians, as shown by the records of the United States in the office of the United States Indian agent at the Osage Agency, Oklahoma Territory, as it existed on the first day of January, nineteen hundred and six" (together with some additions or eliminations not material here) should be the roll of the tribe and constitute the legal membership thereof, and that the roll so constituted should determine the persons entitled to share in the distribution. The petition alleges that on January 1, 1906, the name of Bennie Strikeaxe appeared upon this roll, and on this allegation appellants ask that a redistribution be ordered. The petition states that in 1908 the Secretary, in order to carry out the provisions of the 1906 Act directed the Osage Indian Agent to prepare the tribal roll as it existed in his office on the 1st day of January, 1906; that the Agent incorrectly transcribed the names and without authority of law omitted the name of Bennie Strikeaxe; that the Secretary adopted the roll as prepared by the Agent so that Bennie Strikeaxe was denied the right to a distributive share of the tribal property. Appellants prayed for a rule directing the Secretary to show cause why mandamus should not issue requiring him to restore the name of Bennie Strikeaxe to the final roll and, if necessary to that end, to recompile the roll accordingly and then to pay to appellants as the lawful heirs of their deceased father an amount equal to a per capita share of the annuity and other payments accruing to them under the Act, and for general relief.

■ Enough has been said to show that the Act of June 28, 1906, fixed the previous January 1st as the time when each member of the tribe obtained the individual, alienable, descendible interest in the property of the tribe to which he was entitled under the statutory scheme of distribution. The members of the tribe whose names appeared on the December, 1905, roll—which was the latest record in existence on January 1st—but who had died between the making of that roll and January 1st, were for reasons which we shall set out more fully hereafter not intended to be included as allottees, and the agency roll, if kept current, would have shown only the names of those members living on January 1st. In this view, the question we have to decide is whether the fact that Bennie Strikeaxe's name was on the roll is of itself, without more, sufficient to warrant the granting of appellants' prayer.

■ The Secretary appeared and moved to dismiss the petition on the grounds (1) that the Act of June 28, 1906, made the roll approved by the Secretary final and deprived the court of jurisdiction to change it; (2) that the petition is bad because it fails to allege that Bennie Strikeaxe was in fact alive on January 1, 1906, or that any records show that he was alive on that date; (3) that the petition is bad because of failure to join all members of the Osage tribe as parties defendant; and (4) that the petition is without equity in that the tribal roll which it seeks to open and reform has been held final ever since 1908 and has been the basis on which the tribal lands have been allotted and many millions of tribal funds have been distributed over a period of 29 years. The trial court dismissed.

To sustain the dismissal, the Secretary relies principally upon our holding in Ickes v. Pattison,[3] a case in many respects like this, in which we said that the concluding paragraph of Section 1 of the Act of 1906 [4] deprived us of jurisdiction to grant any relief. But upon further consideration, we think we may have overstated the law in this respect. Congress undoubtedly did repeal, as to the Osage Indians, the provision of the Act of 1894 [5] which conferred

---

[3] 65 App.D.C. 116, 80 F.2d 708.

[4] " * * * and the said roll as above provided, after the revision and approval of the Secretary of the Interior, as herein provided, shall constitute the approved roll of said tribe; and the action of the Secretary of the Interior in the revision of the roll as herein provided shall be final, *and the provisions of the Act of* Congress *of August fifteenth, eighteen hundred and ninety-four, Twenty-Eighth Statutes at Large, page three hundred and five, granting persons of Indian blood who have been denied allotments the right to appeal to the courts, are hereby repealed as far as the same relate to the Osage Indians; * * *.*" (Italics supplied.)

[5] 28 Stat. 305, 25 U.S.C.A. § 345.

jurisdiction upon Federal courts to hear and determine suits arising within their respective jurisdictions involving the right of any Indian to an allotment of land under any law or treaty of the United States. But the jurisdiction thus created and later repealed was a special jurisdiction conferred upon Federal courts over controversies arising within their territorial jurisdictions. Its passage obviously was intended to furnish a local forum for the settlement of disputes involving Indian allotments. Its repeal in the 1906 Act left the law as it had previously been. In the instant case appellants are not invoking the special jurisdiction created by the 1894 Act, but are asking the remedial writ of mandamus on the ground that the Secretary's action was arbitrary, and assert that jurisdiction to grant relief existed before and after the passage of the 1894 appeals Act and without regard to its terms. Garfield v. U. S. ex rel. Goldsby, 211 U.S. 249, 261, 29 S.Ct. 62, 53 L.Ed. 168. That case sustains the principle that, in circumstances similar to those alleged here, mandamus may issue wherever it is shown that the Secretary has acted wholly without authority of law, and in this case the complaint alleges, and the motion to dismiss admits, that Congress established the tribal roll as it existed on January 1, 1906, and declared the persons whose names appeared thereon to be the persons entitled to share in the distribution of the lands, and likewise alleges that, notwithstanding Bennie Strikeaxe's name was there, the Secretary two years later, in compiling the final roll required by the Act, arbitrarily removed his name therefrom, with the result of depriving his heirs of property he was entitled to receive. Considered in this view, relief in the nature of mandamus is proper. See Federal Rule of Civil Procedure 81(b), 28 U.S.C.A. following section 723c.

But such relief is not granted as of right, and may be refused for reasons comparable to those which would lead a court of equity, in the exercise of a sound discretion, to withhold its protection of an undoubted legal right. United States v. Dern, 289 U.S. 352, 359, 53 S.Ct. 614, 77 L.Ed 1250. Here, as we have seen, appellants' rights depend upon the establishment of their father's right, which depends

in turn upon the fact that he was alive on January 1, 1906. Ickes v. Pattison, supra. If he died prior to January 1st his rights in the tribal property died with him. This was the contemporaneous construction of the Act by the Department and, though the Act has since been amended and various of its provisions changed, the Department's interpretation has remained unquestioned, and was quoted and approved by us in Ickes v. Pattison, supra. And see also Wilbur v. United States ex rel. Kadrie, supra. This being so, the mere retention of a name on the rolls, whether under a departmental rule or from inadvertence or mistake or lack of knowledge on the part of the agent of the fact of death, should not foreclose all inquiry on the vital question on which the right depends. While it is true that the literal language used by Congress made the roll existing on January first conclusive except for fraud, nevertheless it is perfectly manifest that Congress had no purpose of recreating rights in the estate of a dead man which had been terminated by his death. And in this aspect, if the government had answered the petition—which in cases of this nature is the preferable course—and had denied that Bennie Strikeaxe was alive on January first the burden of showing the contrary would have devolved on appellants, and without such a showing they would have been out of court. As it is, the petition does not allege that Strikeaxe was alive on January first, and while the record contains no assertion by the Secretary that he was not, both the oral argument and the briefs refer to a pencil notation on the copy of the December, 1905, roll kept in the Osage Indian Agency in Oklahoma, that he had died December 28, 1905.[6] We think we may assume, particularly since the contrary was not suggested by counsel for either party, that the Agent's action in certifying the roll with Bennie's name omitted and the Secretary's similar action in establishing the final roll, were both induced by their belief that the notation correctly stated the fact. It is true, the presence of the pencil notation is not shown by the record, and in mentioning the circumstances we are not considering it as strengthening the government's case. In consequence, we do not know and are unable to say what was the date of Ben-

---

[6] This fact appears more fully in the opinion of the Tenth Circuit Court of Appeals in Jump v. Ellis, 100 F.2d 130, which both parties refer to in briefs and discussed in argument at the bar.

nie Strikeaxe's death. But we do know from appellant's complaint that the allotment of land and distribution of money was made in 1908, about thirty years before this action was begun, and was never challenged until the filing of this petition. At that time appellants are said to have been children of tender age, and even if we take this to mean that they were then under five years of age, which is unlikely, more than ten years elapsed after they reached maturity before this proceeding was begun, and in the meantime the lands which had been divided among the members of the tribe, including appellants, have since, doubtless, passed through many hands. To grant the relief asked would create rights as of January 1, 1906, and whether this be followed by a redistribution of land or its equivalent out of tribal moneys, it would be justifiable only upon a positive showing that the Secretary's action in revising the roll was unmistakably wrong. Without allegation and proof that Bennie Strikeaxe was alive January 1, 1906, we cannot go that far. Indeed, it seems to us perfectly clear that if Strikeaxe had been alive January first and records were available to prove it, the experienced counsel appearing in this case would have stated it as a fact in the petition and that the failure to do so can be ascribed only to one or the other of two facts—that Strikeaxe died prior to January first or that the question is undeterminable for the reason that there are no present records to fix the date of death. In such a case of doubt it would, we think, be improper to exercise the extraordinary powers of the court which, as we have many times said, should be done only where the case is clear and the reasons compelling.

The decree below is, therefore, affirmed without prejudice.

Affirmed.