Vernon **MASAYESVA**, Chairman of the Hopi Tribal Council of the Hopi Indian Tribe, for and on behalf of the Hopi Indian Tribe, Plaintiff,

v.

Peterson **ZAH**, Chairman of the Navajo Tribal Council of the Navajo Indian Tribe, for and on behalf of the Navajo Indian Tribe, Defendant,

v.

Evelyn **JAMES**, et al., Intervenors.

No. CIV 74–842 PCT EHC.

United States District Court,
D. Arizona.

March 11, 1992.

---

James E. Scarboro, David C. Warren, Richard P. Barkley, Arnold & Porter, Denver, Colo., for plaintiff.

Terry E. Fenzl, Amy J. Gittler, Brown & Bain, P.A., Phoenix, Ariz., for defendant.

K. Jerome Gottschalk, Robert M. Peregoy, Edgar T. Bristow, Native American Rights Fund, Boulder, Colo., for intervenors.

## ORDER

### Re: Allotments for which patents did not issue

CARROLL, District Judge.

Defendant Peterson Zah, on behalf of the Navajo Nation,[1] moves for partial summary judgment, requesting that this Court find that the Hopi Tribe and San Juan Southern Paiute Tribe ("the Paiutes" or "Paiute Tribe") do not have a claim to lands in the 1934 Navajo Reservation ("the Reservation") which were allotted to individual Navajos, but for which patents did not issue. This is one of a number of motions for partial summary judgment by the Navajo Nation seeking to exclude certain categories of land from the adjudication of Hopi and Paiute interests in the Reservation.[2] The Hopi Tribe has cross-motioned for partial summary judgment.

1. The Navajo Tribal Code, 1 N.T.C. § 301, requires officials of the Navajo Tribe to use the term "Navajo Nation" rather than "Navajo Tribe." Throughout this Order, the Court will use the term employed by the Navajos.

2. The Navajo Nation also seeks to exclude lands allotted where patents had been issued to individual Indians, school lands designated to the State of Arizona under the Arizona Enabling Act, lands purchased by or on behalf of the Navajo Tribe before 1934, and privately-owned lands relinquished pursuant to section 2 of the 1934 Act or purchased by or for the Navajo Tribe after 1934. These issues will be addressed in separate orders.

*Factual Background*

As part of the nineteenth century effort to assimilate Native Americans, Congress passed the General Allotment Act (24 Stat. 388 (1877), as amended by 26 Stat. 794 (1891), codified as amended, 25 U.S.C. §§ 331–334, 339, 342, 348, 349, 354, 381), which mandated allotment of reservation lands, and provided for allotment of nonappropriated public lands to Indians not living on a reservation at the time of passage.

The 25 allotments at issue in this case were approved to non-reservation Indians under Section 4 of the General Allotment Act on December 5, 1894 by the Acting Secretary of the Interior.[3] In a letter written on that date to the Commissioner of the General Land Office, the Acting Secretary stated, "You will please cause patents to issue to said allottees as provided by law, and when issued to transmit the same to the Commission of Indian Affairs for delivery to the parties entitled thereto." For unknown reasons patents were never issued, and on or about April 25, 1916, the Superintendent of the Western Navajo School received a letter from the Commissioner of Indian Affairs requesting that the Superintendent report "as to the advisability of adjusting these applications to the survey with a view of the issuance of patents."[4]

On May 19, 1916, the Superintendent wrote back to the Commissioner recommending that the applications be cancelled. The Superintendent cited a number of reasons, including that he had found that a number of the applicants were no longer living, that there were practically no markers to show the boundaries of the tracts, and that "none or practically none" of the living applicants continued to reside on the tracts. Also, he found that most of the applications were for land on which there was a spring or water seep, which he felt rendered the land useless for grazing, and was unfair to the rest of the members of the Tribe.

On June 8, 1916, the Assistant Commissioner of Indian Affairs transmitted his recommendation to the Secretary of the Interior that the allotments be cancelled, citing the circumstances revealed by the Superintendent and the fact that the land had been withdrawn pursuant to the Executive Order of January 8, 1900 for the Navajo Reservation, and so was in any event set aside for Indian use.

On August 1, 1916, the General Land Office of the Department of Interior sent a letter to the "Register and Receiver" of the Land Office in Phoenix, directing that office to "notify the parties in interest, in care of the Superintendent of the Western Navajo School at Tuba City, Arizona", that the allotment applications had been rejected, and of the right to appeal the rejection within thirty days of receipt of the notice.

On August 10, 1916, the "Register and Receiver" in Phoenix sent registered letters addressed to the allottees, in care of the Superintendent.[5] The letters were re-

---

3. The Navajo Nation submitted letters obtained from the National Archives dated December 5, 1894 from the Acting Secretary of the Interior to the Commissioner of the General Land Office and the Commissioner of Indian Affairs. The letters confirm approval of allotments in several states, including Arizona, and directs that patents be issued to each allotment. The specific allotments are not identified in the letter. (Exhibit 26 to Affidavit of Amy J. Gittler). However, the Navajo Nation also submitted the "endorsements" for the 25 applications, the administrative records of activity affecting the allotment applications, which also reflect that the applications were approved on December 5, 1894. (Exhibits 1–25 to Affidavit of Mark R. Leutbecker). Further, each endorsement contains the number "8232", the file number assigned to the 25 allotment applications by the

Department of Interior; these same file references are contained on the December 5, 1894 letters approving the applications. Thus, the Navajo Nation has introduced substantial evidence that the applications were approved.

4. This information is reflected in the May 19, 1916 letter from the Superintendent of the Western Navajo School to the Commissioner of Indian Affairs.

5. Copies of the envelopes in which these letters were sent were attached as exhibits to the Affidavit of Amy Gittler and the Supplemental Affidavit of Mark Leutbecker; these envelopes indicate that the letters were postmarked on August 10, 1916, and sent by registered mail, "receipt demanded". The original envelopes were also stamped with a second postmark from Tuba

turned in the original envelopes to the Phoenix office on October 8, 1916, the return receipts unsigned by any of the allottees.

*Discussion*

■ Section 1 of the Act of June 14, 1934, 48 Stat. 960 (the 1934 Act), provides in part:

> All valid rights and claims initiated under the public land laws prior to the approval hereof involving any lands within the areas so defined, shall not be affected by this Act.

The Navajo Nation argues that the allotments at issue here are excluded from the effect of the 1934 Act as the applications were "initiated" prior to the passage of the Act. However, if the Navajo interpretation of this section were accepted, allotment applications which were *never* approved would be "valid rights and claims" as long as the applications were filed before 1934, clearly an untenable outcome.

The Navajo Nation also argues that the allotments are excluded under another part of Section 1 of the 1934 Act, which states:

> All vacant, unreserved, and unappropriated public lands ... within the boundaries defined by this Act, are permanently withdrawn from all forms of entry or disposal for the benefit of the Navajo and such other Indians as may already be located thereon ...

This Court must decide whether the lands allotted to the 25 individuals are "vacant, unreserved, and unappropriated", and thus subject to Hopi and Paiute claims.

■ The parties first dispute whether the allottees obtained vested rights in the allotments prior to their rejection. The Navajo Nation argues that under Section 4 of the General Allotment Act, an applicant's rights vest upon selection of the land. However, it is clear that applicants for allotments do not obtain a vested interest in an allotment simply upon selection of the land. In *Kale v. United States*, 489 F.2d 449, 453 (9th Cir.1973), the Court stated,

"Congress did not intend that an Indian acquire a vested right to an allotment simply by settling on a piece of land and then filing an application." *Accord, Hopkins v. United States*, 414 F.2d 464, 468 (9th Cir. 1969); *Wise v. United States*, 297 F.2d 822 (10th Cir.1961). Further, the Navajo Nation admits that under Section 1 of the General Allotment Act, vesting of rights occurs at the issuance of a patent. (See Motion at page 5). Sections 1 and 4 of the General Allotment Act are read with the same limitations. *Hopkins*, 414 F.2d at 468.

■ Additionally, although no court has directly addressed whether applicants obtain a vested interest in allotments which are initially approved by the Department of Interior and later rejected before patents issue, the cases have made clear that the right to an allotment vests upon issuance of the patent. *United States v. Rowell*, 243 U.S. 464, 469, 37 S.Ct. 425, 427, 61 L.Ed. 848 (1917); *Finch v. United States*, 387 F.2d 13, 16 (10th Cir.1967) ("Not until ... the issuance of a patent does the allottee have a vested right to any particular plot of land"), *citing, LaRoque v. United States*, 239 U.S. 62, 36 S.Ct. 22, 60 L.Ed. 147 (1915) and *Woodbury v. United States*, 170 F. 302 (8th Cir.1909). As no patents were issued for the allotments here, the allottees did not obtain a vested right in the allotments.

■ Despite the fact that the allottees did not have a vested right in the allotments, the rejection of the allotments still required due process. In *Pence v. Kleppe*, 529 F.2d 135 (9th Cir.1976), the Ninth Circuit discussed the Alaska Native Allotment Act, legislation which is interpreted similarly to the General Allotment Act.[6] *Pence*, 529 F.2d at 141. The Court found that "the Alaska Native applicants whose applications the Secretary intends to reject must be given *some* kind of notice and *some* kind of hearing before the rejection occurs."

---

City dated October 6, 1916, and were returned to the Phoenix Office. The original return receipts were also returned to the Phoenix office unsigned.

6. The Alaska Act "plugged a hole" in the General Allotment Act's failure to address Alaska Natives.

*Pence*, 529 F.2d at 142 (emphasis in original).

As previously discussed, on August 10, 1916, the "Register and Receiver" of the Phoenix Land Office sent registered letters addressed to the allottees, in care of the Superintendent. The Hopi Tribe argues that the Court must presume that the allottees received actual notice, contending that the Superintendent was directed to deliver the letters to the allottees, and that public officials are presumed to "properly discharge their duties." *Del Norte County v. United States*, 732 F.2d 1462, 1468 (9th Cir.1984), *cert. denied*, 469 U.S. 1189, 105 S.Ct. 958, 83 L.Ed.2d 964 (1985). However, the Superintendent did not receive a directive to personally deliver the letters to the allottees. Although the Phoenix Land Office sent registered letters addressed to the allottees in care of the Superintendent, the Hopi Tribe did not introduce any evidence that the Superintendent was required to personally deliver the letters. Thus, this Court will not presume that the Superintendent did so, nor that the allottees received actual notice of the rejection.

Further, as the letters were returned in the original envelopes to the Phoenix office on October 8, 1916, and the return receipts were not signed by any of the allottees, the evidence indicates that the allottees did not receive actual notice of the rejection of their allotment applications.

However, the attempted notice was constitutionally sufficient. Due process requires notice that is "reasonably calculated to reach [the] interested parties." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 318, 70 S.Ct. 652, 659, 94 L.Ed. 865 (1950). In *Pence v. Andrus*, 586 F.2d 733, 742 (9th Cir.1978) ("Pence II"), the plaintiffs contended that notice by publication was constitutionally insufficient since the agency was not required to send a copy of the rejection to the applicant at the nearest post office. The Court held that publication was sufficient; although not explicitly addressed by the Court, implicit in the discussion was the assumption that notice by mailing to the nearest post office was sufficient. In this case, notice sent to the Superintendent may have been the notice most likely to reach the allottees. It was unlikely that any of the allottees had mailing addresses at that time, and personal delivery may not have been possible due to the Superintendent's prior observation that most of the applicants were no longer living and that the living applicants were no longer living on the allotted lands. The Navajo Nation has not demonstrated that the notice was not reasonably calculated to reach the allottees.

The Court also notes that 25 U.S.C. § 640d–16(a) specifically exempts only *patented* allotments. That section states:

[N]othing in this Act shall affect the title, possession, and enjoyment of lands heretofore allotted to Hopi and Navajo individuals for which patents have been issued.

Congress could have chosen to exempt all allotments from the scope of the 1934 Act, regardless of whether patents had issued, but instead restricted that exemption to patented allotments.

Finally, as pointed out by the Hopi Tribe, given the evidence that the allotments were not being used by the Navajo allottees in 1916, either because the land was not sufficient to support grazing or due to death of the allottees, the inclusion of the "allotments" in lands subject to Hopi and Paiute claims will further the purpose of the 1934 Act to avoid disturbing existing land use patterns. *Sekaquaptewa v. MacDonald*, 619 F.2d 801, 808 (9th Cir.), *cert. denied*, 449 U.S. 1010, 101 S.Ct. 565, 66 L.Ed.2d 468 (1980).

Accordingly,

IT IS ORDERED denying the Navajo "Motion for Summary Judgment With Regard to Lands Allotted but not Patented to Individual Indians" (document # 550).

IT IS FURTHER ORDERED granting the Hopi Tribe's "Cross–Motion for Summary Judgment With Regard to Lands Allotted but not Patented to Individual Indians" (document # 615).